## Continental Insurance Company of New York v. Stratton.

(Decided October 28, 1919.)

### Appeal from Ohio Circuit Court.

1. Insurance—Failure to Pay Premiums.—Where premiums on a policy of fire insurance fall due on October 1st, and there is a condition in the policy, providing that the insurance company shall not be liable in case of default in the payment of the premiums on the day named, and that the policy shall be suspended

during the period in which the insured fails to pay his premiums, the failure of the insured to pay the premiums promptly will suspend the operation of the policy during his default, and until the premium is paid at the office of the insurance company and accepted by the company, at which time the policy is revived and becomes effective.

2. Insurance—Failure to Pay Premiums.—A failure to pay a premium due on October 1st, until October 15th, will suspend the operation of the policy from the first to the 15th; and if a fire occurs in the interim, destroying the insured property, the company will not be liable on the policy, and this is true although the insured may have forwarded a check after the first of the month and before the occurrence of the fire, which was not received at the office of the company and credited before the fire.

WOODWARD & KIRK for appellant.

HEAVRIN & MARTIN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

The insurance company issued and delivered to Stratton on September 14, 1915, a policy of fire insurance covering a certain dwelling house situated in Ohio county, Kentucky, insuring the property against loss by fire between 12 o'clock noon, on that date, and 12 o'clock noon of September 14, 1920, in consideration of a premium of $34.55, divided into five equal installments of $6.91 each, the first of which was paid at the time the policy was issued and the others were to become due and be payable on the first day of October of each succeeding year through the life of the policy. The second premium was not paid on the first of October, in compliance with the contract, but it was paid about the 9th of that month by check sent to the New York office of the Company. The third premium of $6.91 due on October 1, 1917, was not paid when due, but a check for the proper amount dated September 26th was received at the office of the company in New York on October 15, 1917, credited to the account of Stratton and deposited in the bank by the company on that date. A few days later the company received notice from Stratton that the house which the policy covered had been destroyed by fire on October 12, which was three days before the premium was received at the office of the company. The company declined to pay the policy, $350, and Stratton instituted this action on the 13th of February, 1918, to recover on the policy. A judgment having been entered in favor of Stratton, the company appeals.

An agreed statement of facts is filed in lieu of evidence. By said statement it is agreed that the policy contains this provision:

"And it is hereby agreed that, in case of non-payment of any one of the installments herein named at maturity, this company shall not be liable for loss during such default, and the policy for which this note was given shall lapse until payment is made to this company in New York or to its Western Department at Chicago, and in the event of such non-payment, the whole amount of installments earned, due and payable, and may be collected by law. The said policy may be cancelled at any time by compliance with its provisions."

The note for $27.64, signed by Stratton, which was to cover the four deferred payments of $6.91 each, on the premiums, contains this agreement: "I promise to pay to said company (appellant) or order, at their office in Chicago or New York . . . twenty-seven and 64/100 dollars in installments . . . , and it is hereby agreed that in case of non-payment of any one of the installments herein named at maturity, this company shall not be liable for loss during such default, and the policy for which this note was given shall lapse until payment is made to this company in New York, or to its Western Department at Chicago, and in the event of such non-payment, the whole amount of installments remaining unpaid on said policy may be declared earned, due and payable, and may be collected by law. The said policy may be cancelled at any time by compliance with this provision."

The insurance company is defending upon the ground that the premium, $6.91, which was due October 1, 1917, was not paid at that time nor received nor credited in the office of the company until October 15th, which was three days after the fire occurred that destroyed the building insured; and it is insisted this caused the policy to lapse for non-payment of the premium, and the premium not being paid until after the fire, there was no property to be insured and the policy could not therefore be revived.

Appellee Stratton insists that the policy was in full force at the time of the fire and that such a provision in the policy as quoted above does not cause the policy to lapse by non-payment of the premium on the day fixed, but only renders such contract voidable at the option of the insurance company, and as this option of the com-

pany to render the policy inoperative was not exercised by the company before the happening of the fire, it was too late to claim exemption from liability on account of the non-payment of the premium. While it is alleged in the pleading of Stratton that the check for the premium due October 1, 1917, was made out and signed by him on the 26th of September, and duly posted to the company at its office in New York, the agreed statement of fact does not fully support this averment, the statement being "that the third installment due October 1, 1917, was not paid when due but was paid by check dated September 26, 1917, and mailed to the defendant company and received and cashed by it on October 15, 1917." It will be noticed that the agreement goes only to the extent of showing that the check was dated September 26th, and does not show that it was mailed on that day. However, it shows that it was received and cashed in the office of the company on October 15th, which was some nineteen days later. From the date of other letters passing between the parties, we learn that it takes from two to three days for a letter to go from the post office address of Stratton to the office of the company in New York. It is interesting to note the absence of proof of the date the letter was posted by Stratton. However this may be, a payment by check of an overdue premium is not made under a contract similar to the one under consideration until the check is received at the office of the company, cashed and applied to the extinguishment of the premium note. Continental Insurance Co. v. Hargrove, 131 Ky. 837. A fair construction of the clause of the policy and promissory note above quoted, would give them this meaning: the insurance company shall not be liable for loss occurring after the premium on the policy becomes due and while it remains unpaid, and the policy shall be inoperative and its binding force suspended during such delinquency of the insured; but on the payment of the overdue premium and acceptance by the company the policy shall immediately revive and become effective, eo instante. Applying this construction to the facts before us, we are forced to the conclusion that Stratton through his neglect forfeited his rights under the policy sued on. Admitting that he posted the check to the company for the premium on October 11, 1917, as is his contention, it was not received at the office until the 15th of the month, which was after the fire. Had it been received at the company's office on the 11th of Octo-.

ber, or at any time before the fire actually occurred, and the company had accepted the check in payment of the premium, and cashed the same, it would have been bound upon the policy, because such acceptance would have immediately revived the policy in favor of Stratton. At the time the premium was received and accepted at the office of the company in New York the house had been destroyed by fire, and as stated in the case of Continental Insurance Co. v. Hargrove, *supra,* "the contract was no longer executory, for as the subject matter (the house) had been destroyed, it was no longer possible for the insurer to indemnify against its future loss, and there was nothing to support the undertaking in the policy to do so." A revival of the contract of insurance can be operative only from the instant that it took effect, and the policy became rejuvenated and alive. It could not relate back, because a contract of insurance can only look forward and never retrospectively.

Appellee Stratton relies upon the waiver by the company on the forfeiture clause of the policy. The waiver, he asserts, results from the company's admitted acceptance of premiums paid by Stratton, before the loss but after maturity, without objection, in the years 1916 and 1917, and a further fact that the company admits that it was its custom to send a notice to each policyholder fifteen days before maturity of installments, and another notice fifteen days after the maturity of each installment. The only deferred installment paid was the one due October 1, 1916, and which was paid about the 9th of that month. True, an installment was paid at the time the policy was issued. We are of opinion that a single prior instance of accommodation and indulgence granted by the company to Stratton on the payment of a premium is not sufficient to establish a custom of accepting installments after they are due. However this may be, it would have little or no effect upon the case at bar under the construction we have placed upon the contract embraced in the note and policy.

By the terms of the policy and note, the insurance company had the right to retain the notes and to collect such part of them as equalled the earned premium to the date of the lapsing of the policy. The company was, therefore, not under the necessity of returning the notes to Stratton before the policy became suspended in order to avoid liability. Stratton had contracted with the company that in case he defaulted in the payment of

a premium installment or allowed the installment to become overdue, that the policy should become inoperative during such default on Stratton's part, and we know of no principle of public policy that would prevent persons *sui juris* from entering into a binding obligation of this kind upon sufficient consideration.

The unusual situation which the facts present makes this a hard case, but the neglect of Stratton alone is responsible for his loss.

Under the agreed state of facts it appears that the judgment of the court, to whom both questions of fact and law were submitted, should have been for appellant company. The appeal prayed is granted, and the judgment is therefore reversed for proceedings consistent with this opinion.

Judgment reversed.