MARY GUEST & SON, CO-PARTNERS, RESPONDENTS, v. THE FARMERS MUTUAL FIRE INSURANCE COMPANY, APPELLANT.—45 S. W. (2d) 115.

Kansas City Court of Appeals.    December 7, 1931.

*Lon R. Owen* and *S. J. Jones* for respondents.

*Collet & Son* for appellant.

BLAND, J.—This is an action on a fire insurance policy. There was a verdict and judgment in favor of plaintiffs in the sum of $2600 and defendant has appealed.

The facts show that defendant is a farmers mutual fire insurance company, located at Mendon, Chariton county; that on the 7th day of July, 1927, defendant issued a fire insurance policy in the amount of $5950, insuring plaintiffs' property for a period of five years. Plaintiffs, on March 24, 1929, suffered a loss by fire of part of the property insured. Defendant refused to settle for the loss on account of the failure of the plaintiffs to pay the annual assessment made upon the policy for the year 1928.

The by-laws of the defendant, which were copied in the policy, provided that when an assessment was levied by the executive committee of defendant the secretary should send out notices to the policy holders for the amount due from each; that the policy holder should remit the amount due to the secretary within thirty days

from the time of the giving of the notice and if payment should not be made within that time the insurance should be suspended and after sixty days from the date of such notice the policy should be absolutely void; that the notice of the assessment should be mailed to each member to his address as shown in his or her application and the notice, if so mailed, addressed and deposited in the post office, postage prepaid, should be sufficient notice to all persons concerned.

There is no dispute as to the validity of the assessment. Defendant's evidence tends to show that notice of the assessment was duly mailed on the 3rd day of January, 1929, and became due and payable on the 15th day of January of that year. Immediately after the assessment was thirty days past due defendant, according to its evidence, mailed out a second notice. Plaintiffs denied receiving the first notice but testified that they received the second one on the 9th day of March, 1929.

There is no dispute that the assessment was not paid prior to the fire but plaintiff, William Guest, testified that, on March 26, 1929, he called at the office of the defendant and there talked to the president and the secretary, who told him that the company would pay the loss; that he then gave them a check for the assessment, amounting to $23.80; that the secretary took the check and put it in the vault, came back and stated: ''Now, men that check was just as good yesterday as today. It has always been in effect.'' The president said, ''No, why should we bother with it. Your policy was always all right, was always in effect.''

The secretary denied that he or the president promised to pay the loss. He testified that plaintiff, William Guest, came to defendant's office, stating his barn had been burned. The witness said that was unfortunate as Guest had not paid his assessment; that Guest admitted that he had received both notices but that he had neglected to pay the assessment; that Guest admitted that he had no insurance but stated that he had come to see if the company ''wouldn't donate us something;'' that the witness said there would be no donation and that ''you failed to pay your assessment and we owe you nothing;'' that Guest stated he wanted insurance on the property that was left; that the witness told him that under the custom of the company the policy was cancelled for nonpayment of the assessment and if he wanted another policy he must pay what was owing and take out a new policy, but in view of the fact that he had had such a ''bad loss,'' if you will pay up the company what you owe us. . . . I will reinstate your policy on the property you have . . . from the 26th day of March on;'' that Guest gave him his check and he gave the former a receipt in accordance with the agreement and Guest left.

The evidence shows that when a policy lapsed for nonpayment of an assessment and the insured wanted the insurance continued the company customarily required the insured to pay all back assessments and take out a new policy, for which a fee was required to be paid.

The president corroborated the secretary relative to their being no promise to pay the insurance. The president testified that Guest was told that if he would pay up the back assessment the company would reinstate the policy and waive the charges made for a new policy, in view of the fact that the insured had had bad luck; that the agreement was that the policy should be reinstated as to the property not burned and should be from that date on, or the ''equivalent to taking out new insurance;'' that the insurance on the barn was stricken from the books of the company, it never having had possession of the policy. He further testified: ''Policy holders are carried twelve months without paying a cent after the first year. We don't know what to make the assessment until the end of the year. At the end of the year, they owe for that.''

Complaint is made of plaintiffs' instruction No. 1, which told the jury that if plaintiffs failed to pay the assessment which became due on January 15, 1929, yet, if on the 26th day of March, 1929, plaintiffs with the intent of restoring the policy and avoiding a forfeiture thereof, gave defendant a check for $23.80, and the officers of defendant, with the intention of waiving the forfeiture of said policy, accepted and retained the check, then the jury could find in favor of plaintiffs in the sum of $2600; that whether or not it was the intention on the part of Guest and the officers of the company to waive the forfeiture by acceptance of the check was for the jury to determine.

We think this instruction was undoubtedly erroneous. The instruction concedes, in effect, that the first notice was received and the assessment became due and payable on January 15, 1929. The undisputed evidence shows that the assessment of $23.80, was made to pay the losses for the year 1928, and had nothing to do with the payment of the losses for the following year, or 1929, during which time plaintiffs' fire occurred. Under such circumstances, the payment of the assessment, with nothing more, would not constitute a waiver of the forfeiture. [Farmers Mut. Fire Ins. Co. v. Hull, 77 Md. 498; 5 Collidge Briefs on Ins. (2 Ed.), pp. 4431, 4434, 4439; Palmer v. Ins. Co., 31 Mo. App. 467, 473; Witte v. Ins. Co., 1 Mo. App. 188; Ins. Co. v. Devilbiss, 67 Mo. App. 500; Ins. Co. v. Burks, 207 S. W. 847; State ex rel. v. Hudson, 222 S. W. 1049.] The real question arising in the case is whether or not the conversation that Guest claimed that he had with defendant's officers at the time he paid the assessment, would constitute a waiver of the forfeiture, the

payment of the assessment at that time having no bearing upon the matter. The conversation amounts to no more than a statement by the officers of the company that the insurance would be paid, notwithstanding the forfeiture. The fire had occurred and the rights of the parties, under the policy, had become fixed. There was no element of estoppel involved, nor any consideration for the agreement or so called waiver. Under such circumstances, we do not think that the promise made to Guest by the officers was binding upon the company, and defendant had a right to deny liability, there being no evidence that plaintiffs were caused to change their position in any respect between the time the promise was made and the denial of liability. [Doerr v. Ins. Co., 315 Mo. 266; Joye v. Mut. Ins. Co., 54 S. W. 371; Hubbard v. Mutual Res. Life Ass'n., 80 Fed. 681, 683; O'Donnell v. K. C. Life Ins. Co., 222 S. W. 920; Ins. Co. v. Stratton, (Ky.), 215 S. W. 416, 417; Smith v. W. O. W., 179 Mo. 119, 135; Harvey v. Grand Lodge, 50 Mo. App. 473, 477.]

We have examined the cases cited by plaintiffs (all foreign cases) and find that, while some of them indicate that there might be such a waver after the loss has occurred, a reading of the facts show that there was an element of estoppel or a consideration present in each instance. In many of the cases cited the company collected or retained premiums or assessments that it was not entitled to if it intended to insist upon the forfeiture. In others the company by its action in recognizing the validity of the policy caused the policy holder to change his position to his detriment. As before stated, there is no such circumstances present in the case at bar.

We think there is no question that the giving of plaintiffs' instruction No. 1 was erroneous, but we do not feel that the judgment should be reversed outright. The testimony of plaintiffs show that they did not receive any notice of the assessment until March 9th and, if it be true that the notice was not mailed until a few days prior to that time, their policy was not suspended or forfeited at the time they sustained their loss, as the by-laws of the company did not require the payment of the assessment until thirty days after the notice was mailed. There is no denial or, in fact, contention on the part of the defendant that if the notice was not mailed until about March 9th, or not mailed thirty days prior to March 24th, it is liable. However, it is contended by defendant that the by-laws do not require the actual receipt of the notice of the policy holder but only that it be mailed under the circumstances provided therein. The evidence of the defendant shows that on the 3rd day of January, 1929, the notices were mailed to all policy holders who were liable for the assessment. Of course, there was no personal recollection by an individual of any mailing of the notice to the plaintiffs but defendant

showed that it mailed notices to all of the policy holders whose names were on its records and that the "records were checked and double checked" with the notices at the time. As all of this testimony on the question of the mailing of the notice was oral and plaintiffs testified that they did not receive the first notice at all or the second until March 9, 1929, an issue of fact was raised as to whether the first notice was mailed and as to whether the second was mailed thirty days before the loss occurred. [State ex rel. v. Hudson, supra, l. c. 1051.] The judgment is reversed and the cause remanded. All concur.