## KERR v. UNITED STATES.
### No. 7391.

United States Court of Appeals for the District of Columbia.

Argued Oct. 9, 1939.

Decided Dec. 4, 1939.

Camden R. McAtee, of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., James B. Costello, and Fendall Marbury, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice and MILLER and VINSON, Associate Justices.

GRONER, C. J.

Appellant is the administratrix of Joseph Kelly Kerr, who was in the United States Army until May 24, 1919. During his service he obtained a war risk insurance policy. Premiums were regularly paid until his discharge and continued the policy in effect to June 1, 1919, and, as a grace period, to the end of that month. The policy lapsed at midnight, June 30, 1919, but by its terms could be reinstated within six months thereafter.[1] On August 4 Kerr mailed a money order for the monthly premium of $6.50, and this was received at the Bureau August 14. On September 26 he mailed a like sum, received October 4. He was accidentally killed November 8. The Bureau applied the first payment to August, the second to July. A month or two later it changed the entries to June and July. In March 1920 it changed them to July and September and, finally, a few days later credited them to June and September. Treasury Decision 47 W.R.,[2] then in effect, made premiums on policies held by discharged soldiers payable on the first day of each month, with the option to pay at any time during the month (the grace period). In the event of lapse, the holder of the policy was entitled to have it reinstated upon making application therefor and tender of premium for one month (the grace period) and one month's advance premium on the reinstated insurance. In the absence of any application, Kerr's policy was not reinstated at the date of his death. In February 1920, however, a retroactive regulation dispensed with the necessity of an application during the period in question, and provided that policies should be deemed to be reinstated if the insured had *tendered* to the Bureau the necessary premiums.[3] After Kerr's death, claim was

---

[1] By Treas.Dec. 47 W.R. reinstatement was allowed on certain conditions within 18 months.

[2] All regulations cited in the opinion are printed in Regulations and Procedure, U.S. Veterans Bureau, Part (I) (1930), pp. 1–58 passim.

[3] Regulation No. 46:

1. Notwithstanding the provisions of Regulation No. 39, dated September 29,

made for payment of the insurance, but the Bureau declined on the ground that reinstatement had occurred in September and, for failure to pay another premium, the policy had finally lapsed some eight days before his death. This suit was then begun, and from a judgment for the United States this appeal was taken.

The question for decision is the effective date of the reinstatement of the policy.

Prior to 1921 there was no statute on the subject of reinstatement. The question must, therefore, be answered in the light of the Bureau's regulations. Admittedly, Kerr in his lifetime and after the lapse of his policy made the two monthly payments required by Treasury Decision 47 W.R., and under Regulation 46, without more, his policy became reinstated. But of what date? A premium for the expired grace period had been paid in August. The second—"the amount of at least one month's premium on the reinstated insurance"—was mailed by Kerr September 26 and received by the Bureau October 4. If the latter was the effective date of reinstatement, the decision should be for appellant, because in that case there was payment for the month of October, and the one month's grace period would extend its benefits beyond the date of death. The Bureau, however, considered the second premium as "tendered" on the date of mailing (September 26), treated it as the September payment, and fixed September 1 as the time of reinstatement. The effect of this was to make the policy expire October 31.

In our view, appellant's position is correct. There was at the time of these occur-

rences no regulation and no fixed practice requiring the Bureau to accept the postmark date as the date of tender of premiums intended to revive a lapsed policy.[4] And this was a lapsed policy. It had come to an end and required conformance to the regulations to revive it.[5] "Tender to the Bureau" was a condition precedent under Regulation 46. When, then, was the second premium tendered and paid?

The word "tender" is usually held to mean that the thing offered must be actually produced and placed in such position that control over it is relinquished by the tenderer so that the tenderee may reach out and lay hold on it. Richey v. Stanley, Tex. Civ.App., 38 S.W.2d 1104; Linch v. Nebraska B. A. Co., 120 Neb. 819, 235 N.W. 456; Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751. It also must be made at the place agreed upon. Holmes v. Holmes, 12 Barb., N.Y., 137. Neither of these conditions, in our opinion, is satisfied by the mailing of a money order, unless the payee has consented to make the post office his agent to receive payment. The act of mailing does not amount either to a tender or to a payment until the actual receipt of the letter by the addressee. The rule in such cases is that the postal authorities are the agents of the sender. In this case they were agents of the insured to transmit the premiums to the Bureau office in Washington. Until the money order reached the Bureau, it was not the money of the insurer but the money of the insured, and until that event the insured was not entitled to the reinstatement of his policy. State v. Connecticut Mutual Life Insurance Co., 106

1919, when any insured whose insurance has been terminated by lapse or cancellation has, prior to February 1, 1920, tendered within his lifetime to the Bureau of War Risk Insurance an amount sufficient to pay the premiums required to be paid under Treasury Decision 47 W.R. or any other Treasury decision or regulation as a condition to reinstatement, such insurance shall be deemed to be reinstated and a written application, statement of good health or other condition prescribed by Treasury Decision 47 W.R. or other Treasury decisions, shall not be required.

2. If a premium under a yearly renewable term insurance contract has been paid or mailed to the Bureau of War Risk Insurance during the lifetime of the insured and prior to February 1, 1920, for which premium a receipt has

been issued or should be issued for a designated month prior to February, 1920, as stated on the receipt, such contract shall be deemed to be reinstated as of date of payment of the premium for which such receipt has been issued or should be issued, and a written application, statement of good health or other condition prescribed by Treasury decisions or regulations issued prior to February 1, 1920, shall not be required.

Paragraph two was made inapplicable to the months prior to November 1919 by Regulation 46–A, adopted Feb. 17, 1920.

[4] Regulation No. 20, of Feb. 21, 1919, permitted mailing before the end of the month, only to *prevent* a lapse.

[5] Meadows v. United States, 281 U.S. 271, 50 S.Ct. 279, 74 L.Ed. 852, 73 A. L.R. 310.

Tenn. 282, 61 S.W. 75. Cases holding that forfeiture may be prevented by mailing a premium in time to reach the insurer before the due date all depend upon a showing that the insurer either requested, authorized, or acquiesced in the sending of the premiums by mail. Mutual Reserve Fund Life Ass'n v. Tuchfeld, 6 Cir., 159 F. 833, and cases cited there. But this rule has been applied only to current premiums on *existing* policies, and has been distinguished and denied effect in cases involving revival of lapsed policies. Travelers' Protective Association v. Roth, Tex.Civ.App., 108 S.W. 1039, affirmed as to this rule, 102 Tex. 241, 115 S.W. 31; Continental Insurance Co. v. Hargrove, 131 Ky. 837, 116 S.W. 256; Bailey v. Sovereign Camp, 116 Tex. 160, 286 S.W. 456, 288 S.W. 115, 47 A.L.R. 876; Continental Ins. Co. v. Stratton, 185 Ky. 523, 215 S.W. 416, 8 A.L.R. 391; and cf. Leahy v. United States, D.C., 10 F.2d 617; affirmed, 9 Cir., 15 F.2d 949, which was a war risk case.

In this view *tender* to the Bureau of War Risk Insurance cannot be said to have taken place until October 4, 1919, unless the post office had been designated as agent to receive the money. And so far as reinstatement of lapsed policies is concerned, the regulations are silent on that point. Nor is there any course of dealing which would take this case out of the ordinary rule. Since, then, there was no tender until October 4, the Bureau was wrong in applying the second remittance to the month of September. The premium was tendered in October and was paid in October, and must be considered as the October premium on the reinstated insurance. Treated thus, the policy was in effect to the date of death, and appellant is entitled to recover.

Reversed.