**JOHNSON MANUFACTURING CO. et al.,**
Appellants,

v.

**Ross EDWARDS et al., Appellees.**

No. 7016.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 30, 1961.

Rehearing Denied March 27, 1961.

Nelson, McCleskey & Harriger, Lubbock, for appellants.

McWhorter, Cobb & Johnson, Lubbock, for appellees.

CHAPMAN, Justice.

This appeal primarily concerns the construction of a written contract entered into between Ross Edwards and Jack Brogden, a partnership known as R & J, and Johnson Manufacturing Co., Inc. and Robert C. Johnson, Jr. The former will be hereinafter referred to as R & J, appellees or plaintiffs. The latter will be referred to either as Johnson, defendants or appellants.

R & J are manufacturers of a go-devil type row crop farm implement with rotary hoes called a "Crustbuster" on which they have a United States Patent, being Patent No. 2,569,464. Appellants also manufacture a similar type farm implement which they call a "Crustmaster", upon which a patent application shows by the record to be pending in the United States Patent Office.

Suit was instituted in the United States District Court of the Northern District of Texas by R & J against Johnson for alleged infringement of their patent in connection with the manufacture, sale and distribution of Johnson's "Crustmaster". While that litigation was pending the parties entered into a written contract on October 20, 1955 in which they sought to settle and compromise the patent litigation then pending. The suit for patent infringement was dismissed and the construction of the contract entered into in connection therewith is the subject of this litigation.

The contract licensed Johnson to manufacture and sell the "Crustmaster" in competition with the R & J "Crustbuster" upon payment to the latter of a royalty of $4 per four-row "Crustmaster" unit, or $1 per row unit. Practically all the units are four rows but a few are two rows. That portion of Paragraph VI of the contract particularly applicable to this suit provides:

"If at any time after the execution of this contract, Company or Johnson,[1] or either of them, learns of any device being manufactured, distributed or offered for sale which Company or Johnson, upon advise of counsel and in good faith consider to be an infringement upon the R & J patent, then Company or Johnson, or either of them, may at any time thereafter notify in writing R & J, or either of them, of such alleged infringement and together with such written notice, tender the sum of One Thousand and no/100 ($1,000.00) Dollars to the said R & J for use by them in the expenses of litigation in connection with the stopping and enjoining said alleged infringement."

Paragraph VII as applicable hereto provides:

"Within ninety (90) days after the written notice of alleged infringement and the tender of $1,000.00 to R & J, the said R & J shall file suit in a United States District Court to enjoin and prevent such alleged infringement and thereafter shall diligently prosecute said suit to final

---

1. The terms "Company or Johnson" used throughout the contract were synonymous.

judgment. \* \* \* It is specifically agreed that if suit is not filed within such 90 day period, or if the same is not diligently prosecuted to final judgment thereafter, then R & J shall immediately and within ten (10) days after such default, pay to the party tendering such $1,000.00 the sum of $1,000.00 in full reimbursement therefor, and thereafter neither R & J, nor any person or party in privity with them, or either of them, shall make further claim against Company or Johnson, or anyone in privity with them, or either of them, under said patent; except this provision shall not relieve Johnson and/or Company from payment of unpaid royalties which may have accrued to date of notice."

Paragraph VIII of the contract provides that upon written notice of alleged infringement and the tender of the $1,000 above contemplated royalty obligations shall cease until such obligations are later reinstated.

Paragraph X of the contract provides in substance that if the contemplated litigation by R & J to enjoin infringement of structures in good faith accused by Johnson as infringing the R & J patent results in final judgment establishing the validity of the R & J patent and that the structure accused by Johnson is an infringement thereof and thus results in an injunction preventing any further such infringement, then the obligations to pay royalty, which would be suspended by the giving of the written notice and tender of a $1,000, shall be reinstated and revived. This paragraph also provides that if such suspended royalties do not amount to as much as a $1,000 then no payment of royalties shall then be made and the difference between the $1,000 and the amount of such delayed or suspended royalties shall be credited to the payment of royalties which would thereafter accrue until said difference had been exhausted.

Paragraph XI of the contract provides that if the contemplated litigation referred to in paragraph ten results in establishing the validity of the R & J patent by the holding that the structure accused by Johnson as infringing does not actually infringe and therefore results in no injunction being issued to prevent the further manufacture, distribution or sale of such accused structure, then the suspended obligations shall be in all things reinstated.

Paragraph XVII of the contract provides:

"In the event of the failure by Johnson and/or Company to pay royalties accruing under the terms of this contract and agreement, if any, within 30 days after written notice of demand to Johnson and/or Company at the address herein below set forth, than this contract and agreement immediately becomes null and void and fully terminated without waiving as to R & J any accrued royalties, or any other rights at law or in equity, as against Johnson and/or Company."

After the execution of the contract and dismissal of the patent suit appellants paid appellees the royalties provided for in the contract during the period from October 20, 1955 to August 1, 1956, the sum of $2,888. They then stopped payment of the royalties but continued to manufacture and sell the "Crustmaster".

On May 2, 1958 appellees by registered mail gave written notice of demand to appellant for payment of all royalties accruing since August 1, 1956, which they admittedly received. After waiting more than thirty days from the time of the demand, the period provided in the contract for waiting under Paragraph XVII, such royalties still having not been paid, R & J filed suit to collect the royalties. In their answer to such petition appellants denied they were indebted to plaintiffs in any amount "for the reasons that all royalties provided for under said contract were paid in full as they became due until the time that the payment of royalties and the obligation to make such payments was fully terminated in accordance with the terms of said contract, \* \* \*." They further pleaded that by

letter of December 18, 1956 they notified R & J that John Deere Implement Co. had displayed at the South Plains Fair in Lubbock in 1956 a device similar to the "Crustmaster", which they considered was an infringement of the "Crustbuster" if the "Crustmaster" was an infringement, and that no further royalties would be paid if John Deere was allowed to produce and sell their implement; that upon learning that R & J were taking no action to prevent the John Deere infringement they then consulted their attorney and caused a personal inspection of the John Deere device to be made by him and obtained from said attorney his written opinion dated January 16, 1957 to the effect that the John Deere device constituted an infringement upon the R & J patent; that on the same date they caused their attorney to prepare a letter addressed to Jack Brogden and Ross Edwards, 343 Avenue H, Lubbock, Texas, which was on February 5 thereafter deposited in the United States mail in Lubbock in a properly stamped envelope; and that a $1,000 check on Johnson Manufacturing Co. was placed inside said February 5 letter.

We believe it is well to note just here that an audit caused to be made in response to an application for Bill of Discovery filed by appellees revealed that appellants owed $886 in royalties that had accrued between August 1, 1956 and February 5, 1957. The latter date is the one upon which appellants contend they gave the written notice of infringement and tendered the $1,000 required in the contract and by which the obligation to pay royalty was suspended as provided in the contract until the obligation to make such royalty payments was reinstated in accordance with the provisions of the contract. Therefore, it is without contradiction in the record that the $886 due in royalties between August 1, 1956 and February 5, 1957 were not paid within the 30-day period from the time of demand for them made on May 2, 1958.

The auditor appointed by the court in response to the motion for a Bill of Discovery did not at first break down the sales of the "Crustmaster" between the dates of August 1, 1956 and February 5, 1957. The auditor was then requested to show the number of sales by dates from August 1, 1956 to February 5, 1957 [the latter date being the one on which appellants alleged they gave notice and tender of $1,000]; the sales made from February 6, 1957 to June 2, 1958; and the number of units sold from June 3, 1958 to the date of the audit.

Immediately upon receipt of the auditor's report showing there were $886 due in royalties between August 1, 1956 and February 5, 1957, Johnson delivered to appellees' counsel a check for that amount and shortly thereafter appellees filed their First Amended Original Petition in which they alleged the contract became null and void on June 2, 1958 because appellants did not pay the $886 within the thirty days period from May 2, 1958 [the day upon which they had made written demand] as they were required to do under Paragraph XVII of the contract within 30 days from demand of royalties due. In such pleading they asked judgment that the contract be terminated as of June 2, 1958.

Paragraph XXI of the contract provides that all notices "shall be given by depositing the same in the United States Mail in a properly stamped envelope addressed in each respective case as follows, to-wit:

"1. To R. C. Johnson, Jr., and/or Johnson Manufacturing Company, P. O. Box 1674, Lubbock, Texas.

"2. To Jack Brogden and/or Ross Edwards, 343 Avenue H, Lubbock, Texas."

Appellants by brief contend they discharged their obligations of notice and tender when they mailed the written notice dated January 16, 1957 on February 5, 1957, with the accompanying check for $1,000, claiming the contract placed the risk of receiving the notices and $1,000 upon the addressees. Their first point contends the con-

tract contained language defining the meaning of "tender" as used in the contract and that the trial court committed reversible error in giving a definition of the term contrary to the meaning therein. Their second point is to the effect that the court committed reversible error in refusing to hold as a matter of law that appellants had properly terminated their obligation to pay royalty "since the evidence is undisputed and the jury found appellants gave such notice and made such tender as the contract required as a prerequisite to terminating such obligation." Their third point contends that appellants, under the terms of the contract, properly terminated their obligations to pay royalty thereunder, the contract itself providing that "under the circumstances existing in this case appellees should not in the future claim or prosecute any claims against appellants for infringement of appellees' patent."

The trial court did not agree with appellants' contentions that the contract contained language defining the meaning of "tender" and defined it in his charge.[2] Neither the court nor the jury agreed with appellants' contentions to the effect that appellants gave such notice or made such tender as was contemplated by the contract. In answers to questions submitted, after the court had heard both appellees and Mr. Johnson testify, the jury found appellants did not tender the sum of $1,000 as contemplated by the terms of the contract and that the contract required of appellants, in order to tender the $1,000 in connection with any infringement, more than just the mailing thereof.

■ We believe it is settled law in this state that in construing contracts the intention of the parties is the determining factor. Guadalupe-Blanco River Authority v. Tuttle, Tex.Civ.App., 171 S.W.2d 520; Ellisor

et ux. v. Kennedy et al., Tex.Civ.App., 128 S.W.2d 842 (Writ Refused). This of course would be in instances such as our case where giving effect to the intention of the parties would not contravene legal principles, statutes or public policy. Green et al. v. Farmers & Merchants State Bank et al., Tex.Civ.App., 100 S.W.2d 132; Clifford-Bell Petroleum Co. v. Banker's Petroleum & Refining Co., Tex.Civ.App., 286 S.W. 564.

It has been textually stated that: Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. 17 C.J.S. Contracts § 295, page 693.

■ Appellees being the owners of the patent were the only ones who could bring suit for infringement, so it must have been the intent of the parties that appellees have the infringing implement actually called to their attention. Additionally, the record shows all parties were cognizant of the expense incident to patent infringement litigation, the consciousness of such fact obviously contributing to the thousand-dollar tender agreement. We believe a proper interpretation of the contract studied from the four-corners' rule shows the parties contemplated that the thousand dollars, either by money or its equivalent, would have to actually be received before appellees were under any obligation to proceed against the infringing device. If we are correct in this belief the definition certainly would be proper. As a matter of fact, had appellants admitted appellees did not receive the letter and check for the thousand dollars we doubt that a submission to the jury would have been necessary, though we are not so holding, since the case was submitted. That the actual receipt of the money or its equivalent was contemplated is further evidenced

2. With respect to the term "tender", as used in this charge you are instructed that in order to make a valid tender the thing to be tendered must be actually produced and offered to the party entitled thereto and the tenderer must place the money or property in such position that his control over it is relinquished for a sufficient time to enable the tenderee, if he desires, to reduce it to possession by merely reaching out and laying hold of the money or thing.

by the contract provision requiring that if suit to stop infringement was not filed within 90 days appellees should within 10 days thereafter pay back the thousand dollars to the party tendering it. If he did not receive it he could not pay it back. Therefore, we cannot agree with appellants that the definition of tender given by the court was reversible error. Such definition or similar definitions have been many times approved. Cornelius et al. v. Cook et al., Tex. Civ.App., 213 S.W.2d 767 (NWH); Richey v. Stanley, Tex.Civ.App., 38 S.W.2d 1104 (NWH); Universal Credit Co. v. Cole, Tex.Civ.App., 146 S.W.2d 222 (NWH); Kerr v. United States, 71 App.D.C. 222, 108 F.2d 585.

■ If the actual receipt of the money was not within the contemplation of the parties it would have the effect of declaring the very fundamental part of the contract to be void; that is, the bringing of suits by appellees to prevent infringing devices. They could not bring the suit without the knowledge of the infringing device and they were not under any obligation to bring it without the thousand dollars with which to prosecute it. "It is a well established rule of construction of contracts that when a court has the choice of construing a contract valid, or as void, the contract should be construed in such manner as to give it validity." Mays v. Pierce, 154 Tex. 489, 281 S.W.2d 79, 82.

■ The jury found the appellants did not give written notice of patent infringement by John Deere Implement Company as contemplated by the contract nor tender the money as contemplated by the contract, and that more was required of defendants in order to make the tender than just the mailing thereof. The jury also found that plaintiffs after February 5, 1957 failed to make such inquiry of defendants concerning absence of royalty payments as a reasonably prudent man would have made but they cancelled out the effect of such finding in the next issue when they found that even if they had so inquired appellants would not have told them.

In his judgment the trial court found "The contract of October 20, 1955 entered into by and between the parties hereto, has in all things terminated as of June 2, 1958 and is of no force and effect as to any of the parties thereto". Such finding has the effect of the court holding that under the provisions of the contract and the uncontroverted evidence introduced the contract terminated as a matter of law because appellees gave written notice on May 2, 1958 for payment of royalties accruing from August 1, 1956 to May 2, 1958 and appellants did not pay them within the 30-day period provided in Paragraph XVII of the contract. The paragraph just mentioned, quoted verbatim in the first part of this opinion, provides the contract shall terminate under such conditions and we find no ambiguity in the wording of the termination provision. The evidence is uncontroverted that $886 royalties were due for such period and appellants admitted it by paying that amount on September 22, 1959. Whatever else may be said in the record concerning notices and receipts thereof it is without contradiction that the May 2, 1958 notice was given by R & J, that it was received by Johnson and that the $886 due for the period in royalties were not paid within the 30 days required to prevent termination of the contract. Therefore, consistent with what we have said above we are compelled to hold the trial court properly terminated the contract.

■ In their fourth point appellants assert that appellees "were confronted with an election as to whether to (1) treat the contract as being fully cancelled, (2) rely upon the terms of the contract and thereby affirm it, and appellees fully elected to treat the contract as being in full force and effect".

The contention in this point is apparently based upon a theory that appellees until their First Amended Original Petition of October 19, 1959 continued to plead and pray for royalties, thus affirming the contract. The record is without contradiction

that appellees had the exact knowledge that enabled them to ask the court for a termination of the contract, for failure to pay royalties due between August 1, 1956 and February 5, 1957 for the first time when that information was supplied by the auditor's report on September 22, 1959. His first report on October 23, 1958 covering the period from August 1, 1956 to October 15, 1958 did not show the February 5, 1957 to June 2, 1958 period separately.

This court has quoted with approval other authority holding that "an election, [of remedies] to be conclusive, must be efficacious to some extent at least. The mere bringing of a suit is not determinative of the right. The party against whom the estoppel is pleaded must have received some benefit under his election". We then held in the case that the mere bringing of an action which has been dismissed before judgment, in which no advantage has been gained or legal detriment occasioned, is not an election. Lewis et al. v. Powell, Tex. Civ.App., 205 S.W. 737 (NWH). We again held the same thing in Adami v. Robinson, Tex.Civ.App., 299 S.W. 659 (NWH), citing Lewis v. Powell, supra. The El Paso Court of Civil Appeals held the same thing, citing our Adami v. Robinson and Lewis v. Powell cases supra. The Galveston Court of Civil Appeals, in City of Houston v. Adams et al., 269 S.W.2d 572, 576, has held that "any litigant who seeks to gain an advantage by virtue of one asserted remedy * * * must abandon or waive any remedy * * * inconsistent therewith, *and it is further recognized that having gained such advantage* the litigant has irrevocably elected to pursue that remedy to the exclusion of all remedies inconsistent therewith", thus recognizing that some advantage must have been gained by the party against whom the election is urged. (Emphasis added.) That case was affirmed in, 154 Tex. 448, 279 S.W.2d 308 by the Supreme Court. There is no advantage whatever shown to have been gained by appellees in any position they took for royalties before asking for a termination of the contract.

Paragraph XVII of the contract itself provides termination without waiving any accrued royalties, which in this case would be those accrued to June 2, 1958, the date when the contract terminated for failure to comply with the demand for royalties due under Paragraph XVII. The jury found that plaintiffs did not treat the contract as binding upon defendants for the purpose of collecting royalties thereunder upon sales by defendants occurring after June 2, 1958.

■ Finally, we believe it is settled law in Texas that "a party is not concluded by a selection of one of two remedies unless he made it with knowledge, or means of knowledge, of the facts." Slay v. Burnett Trust et al., 143 Tex. 621, 187 S.W.2d 377, 394. Until the auditors September 22, 1959 report appellees did not have the actual information upon which to allege grounds showing termination, even though they may have suspected there were royalties due that were not paid within the 30-day period following demand. We think it would be a fair statement from the jury findings and the record as a whole to say appellees never made demand for royalties for any period subsequent to June 2, 1958 after they had sufficient information upon which to plead for a termination of the contract. Accordingly, points one through four are overruled.

■■ Appellant's last point is that the trial court committed reversible error in not permitting them to open and close the argument to the jury. Such contention seems to be predicated upon the theory that the burden of giving notice of an infringing device and tendering the $1,000 was a burden of defendants. There is not any contention in the record but that the notice was mailed and that the envelope which carried the notice included the $1,000 check. We believe the burden was properly placed by the trial court on the plaintiffs to prove that the mailing of the notice and check was not sufficient to terminate the royalty obligations of the contract in the contemplation of the parties at the time the contract was

executed. If we are correct in this statement appellants did not have the burden of proof on the whole case within the contemplation of Rule 269 Vernon's Ann. Texas Rules. Therefore, it was not reversible error under the rule just named and Rule 266 V.A.T.R. to refuse appellants the right to open and close. But even if we should be mistaken on what we have just said the error in any event would be harmless under Rule 434 V.A.T.R., the record not showing as a whole that the error complained of amounted to such a denial of the rights of appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. See also Reserve Life Ins. Co. v. Goodloe, Tex. Civ.App., 316 S.W.2d 443 (NRE); City of Galveston v. Hill et al., 151 Tex. 139, 246 S.W.2d 860.

Accordingly, the judgment of the trial court is in all things affirmed.