**A. T. BAUCUM, Appellant,**

v.

**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, Appellee.**

No. 14004.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 9, 1963.

Rehearing Denied Feb. 6, 1963.

Carter, Stiernberg, Skaggs & Koppel, Harlingen, for appellant.

Strickland, Wilkins, Hall & Mills, Mission, for appellee.

BARROW, Justice.

The sole question presented by this appeal is whether or not appellee, Great American Insurance Company of New York, made a valid tender under the terms of its automobile liability insurance policy so as to successfully halt the running of interest on the full amount of the judgment rendered against its insured. Motions for summary judgment were filed by both parties and this appeal is from the trial court's action in granting the motion of appellee. Appellant agrees that the facts are uncontroverted but urges that a valid tender was not made.

On April 1, 1960, appellant obtained a judgment for $81,636.00 against Jesus Ramirez Hernandez and Jacinto Hernandez. Great American had a liability policy covering the Hernandez brothers to the extent of $25,000.00, which provided in part as follows: "* * * the company shall: * * * (2) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon." On May 18, 1960, the Supreme Court, in a case of first impression in this State, determined that this agreement "obligates the insurer to pay interest on the entire judgment until its part of the same has been paid, tendered or deposited in court." Plasky v. Gulf Insurance Co., 160 Tex. 612, 335 S.W.2d 581. The Supreme Court expressly provided that the insurer could pay its limits and avoid liability for additional interest without prejudice to an appeal by the insured.

On June 13, 1960, before Hernandez had determined to appeal, Great American attempted to discharge its policy limits on the judgment and avoid liability for additional interest. Admittedly, it did not "pay" or "deposit in court" the amount owed by it. On this date appellee's attorneys directed a letter to the District Clerk of Cameron County at Brownsville, Texas, and enclosed an instrument which they called a "draft" in the amount of $26,008.17, together with a copy of a partial release. Copies of this letter were sent to appellant who lived in McAllen, and his attorneys who officed in Harlingen, Texas. The sum of $1,008.17 was the correct amount of interest on the entire judgment from April 1, 1960, through June 15, 1960. The original of the partial release was sent to appellant's attorneys, and the clerk was instructed to deliver the "draft" to appellant in exchange for the executed partial release. No objection was made by appellant to any part of this procedure. An appeal was unsuccessfully

prosecuted on behalf of Hernandez, and when the judgment became final, appellant filed this suit for the policy limits plus interest on the entire judgment from date of judgment. Hernandez v. Baucum, Tex. Civ.App., 338 S.W.2d 481.

■ It is important to determine the legal character of the instrument furnished the district clerk. It was labelled a "draft"; however, both parties assert that it does not have the legal characteristics of a draft and we agree. This instrument provides that it is payable through the First National Bank in Dallas to the order of A. T. Baucum and his named attorneys. The maker of the instrument is appellee, and it contains other identifying information for the benefit of appellee's records. The only reference to the rights of the parties is that it is stated to be in partial payment of the identified judgment. There was no reservation in said instrument whereby appellee was required to approve payment of same. In our opinion, this instrument meets all the requirements of a "check." Art. 5947, Sec. 185, Vernon's Tex.Civ.Stats.; 7 Am. Jur., Bills & Notes, § 7. It is undisputed that at all times appellee had sufficient funds on deposit at this bank to discharge this check when presented.

■ The rule is settled that a tender of payment by check is not a valid tender when objections are made to this medium of payment. Muldrow v. Texas Frozen Foods, Inc., 157 Tex. 39, 299 S.W.2d 275; Littlejohn v. Johnson, Tex.Civ.App., 332 S.W.2d 439, no writ history. It is further settled that when a tender is refused for other reasons, one may not later complain of the medium of tender. Gulf Pipe Line Co. v. Nearen, 135 Tex. 50, 138 S.W.2d 1065; Cockrum v. Underwood, Tex.Civ.App., 301 S.W.2d 953, no writ history; Cornelius v. Cook, Tex.Civ.App., 213 S.W.2d 767, no writ history. Appellant did not make any objection, and we believe that the correct rule would be to treat this silence as a waiver of objection to the medium of tender. This rule is particularly applicable here in view of the uncontroverted affidavits of the established custom of insurance companies and attorneys in this locality, of discharging judgments in this manner. Littlejohn v. Johnson, supra; 26 Ruling Case Law, §§ 17 and 18, 86 C.J.S. Tender §§ 23, 36.

■ The partial release furnished must be examined to determine if appellant was required to compromise or surrender a legal right. A tender accompanied with conditions which the debtor has no right to impose is without effect. Collingsworth v. King, 155 Tex. 93, 283 S.W.2d 30; Wiley v. Scott, Tex.Civ.App., 229 S.W.2d 650, no writ history. However, it is proper to require execution of a receipt or release preserving the respective rights of the parties. Engelbach v. Simpson, 12 Tex.Civ.App. 188, 33 S.W. 596, no writ history. In Plasky v. Gulf Ins. Co., supra, the Supreme Court indicated the unusual problem presented by unqualified tender or payment of part of a judgment without prejudicing the right of appeal on behalf of the insured. It is to the interest of all parties in such a situation to clearly set forth their respective rights. The partial release furnished appellant would serve this purpose. It released the judgment only to the extent of $25,000.00, and interest on the entire judgment to June 15, 1960; it reserved the right of appellant to collect the excess from Hernandez; it preserved the right of appeal on behalf of Hernandez; and appellant was entitled to keep this amount of $26,018.17, regardless of the outcome of an appeal by Hernandez. Appellee represented in said release that its policy limits were $25,000. Appellant had the right to satisfy himself on this material representation, if he desired; however, he made no objection and now does not dispute this policy limit. We hold that the tender was not invalidated by the requirement of execution of the partial release.

■ We overrule appellant's objection now made to the delivery of the instrument to the district clerk. By this action appellee relinquished all control over the check

and placed it at the easy disposition of appellant. Johnson Mfg. Co. v. Edwards, Tex.Civ.App., 344 S.W.2d 506, ref. n. r. e.; Richey v. Stanley, Tex.Civ.App., 38 S.W.2d 1104, no writ history. Appellant and his attorneys were immediately notified of the ready availability of the check. Appellant made no complaint that the tender was not made at the proper place and therefore waived his objection. 86 C.J.S. Tender § 20.

■ At the time of this tender, appellee could not pay the court costs, as the insured had not decided upon an appeal and therefore the costs had not been determined or adjudicated. The partial release recited this fact and provided that the partial release was conditioned upon appellee's promptly paying same upon final adjudication, and expressly provided that it did not discharge appellee's obligation to pay the court costs. The tender was not defeated by the failure, under these circumstances, to pay the court costs before the judgment became final.

The judgment is affirmed.

MURRAY, Chief Justice (dissenting).

I do not concur in the opinion of the majority and here state the reasons for my dissent.

In the case of Plasky v. Gulf Insurance Co., 160 Tex. 612, 335 S.W.2d 581, the Supreme Court, speaking through Justice Walker, held that the insurance company, in exactly the same position as is the appellee here, was liable for interest upon the entire amount of the judgment unless it pays, tenders or deposits in court the amount of its liability on the judgment.

The majority here correctly stated that nothing was paid to appellant or into court, so the only question is, Did appellee make a valid tender to appellant or his attorneys of all sums due by it as liability insurance carrier of the Hernandez brothers?

The word "tender" is usually held to mean that the thing offered must be actually produced and placed in such position that control over it is relinquished by tenderer so that tenderee may reach out and lay hold of it, and it must also be made at the place agreed upon. Kerr v. United States, 71 App.D.C. 222, 108 F.2d 585. In Richey v. Stanley, Tex.Civ.App., 38 S.W.2d 1104, no writ history, is found the following quotation from 38 Cyc. 143:

"In order to make a valid tender of either money or chattels, the thing to be tendered must be actually produced and offered to the party entitled thereto, a mere offer to pay being insufficient; and the tenderer must place the money or property in such a position that his control over it is relinquished for a sufficient time to enable the tenderee, if he so desires, to reduce it to possession by merely reaching out and laying hold of the money or thing; and a person is not bound to say whether or not he will accept the money or thing until it is produced."

See also, 41 Words and Phrases "Tender". Tender is actual proffer of money as distinguished from a mere proposal or a proposition to proffer it. Caplan v. Shaw, 126 W.Va. 676, 30 S.E.2d 132. A tender imports not only readiness and ability to perform, but actual production of the thing to be delivered. Mark v. Rizzo, 6 Misc.2d 2, 162 N.Y.S.2d 633. A "tender" in the form of checks does not constitute legal "tender." Sadler v. May Bros., La. App., 185 So. 81. To constitute valid and legal "tender" of money, the tenderer must relinquish possession thereof for sufficient time and under such circumstances as to enable the person to whom it is tendered to acquire possession thereof without special effort on his part. Universal Credit Co. v. Cole, Tex.Civ.App., 146 S.W.2d 222. A "tender" is an offer to pay a debt or discharge a duty, and in case of a debt, the offer to pay involves, generally, actual production of the money and the placing of it in the power of the person entitled to re-

ceive it. Mayron's Bake Shop, Inc. v. Arrow Stores, Inc., 149 Conn. 149, 176 A.2d 574. At common law, with respect to the payment of money or portable articles, where the time but no place of payment is specified, and no place of payment is fixed by law, the rule is that the tenderer must seek the tenderee and make a tender to him wherever he can be found, and a tender anywhere to the person of the tenderee is good. 86 C.J.S. Tender § 18, p. 567.

With these rules in mind, there can be no doubt that the procedure indulged in by appellee herein on or about June 13, 1960, did not constitute a valid tender in any sense of the word.

The majority opinion holds that appellant and his attorneys, by their silence, waived their right to thereafter complain that there was not a valid tender. In support of this holding the opinion cites Muldrow v. Texas Frozen Foods, Inc., 157 Tex. 39, 299 S.W.2d 275, and Littlejohn v. Johnson, Tex.Civ.App., 332 S.W.2d 439. These cases do not support the holding of the majority. The Muldrow case goes no further than to hold that a tax collector has no authority to accept a personal check in payment of taxes, and that a taxpayer always pays taxes by check at his own risk. It does hold that where a tax collector accepts a check in payment of taxes and the check is promptly paid the payment relates back to the date the check was received by the tax collector, and no penalties are due the State for not timely paying the taxes. Here no check was accepted by appellant, so the effect of acceptance of a personal check is not involved.

The Littlejohn case goes no further than to hold that where a check is refused for reasons other than medium of tender, the tenderee cannot later complain of the medium of the tender. This rule is well recognized, and the majority cite a number of cases so holding, but here there was no check accepted and there was no refusal by the tenderee for any reason whatsoever. It is only contended that when appellant received the letter written to him by appellee's attorneys he did not answer but merely remained silent. I know of no decision in Texas holding that mere silence by a tenderee will thereafter preclude him from pointing out the many ways in which the offer was not a proper "tender," and in my opinion such a holding would be a poor rule of law. Especially do I think this is so where the alleged tender is nothing more than a letter written by the tenderer to the tenderee.

Appellant contends that the so-called draft sent to Mrs. Lula George at Brownsville, Texas was neither a draft nor a check, but a mere inter-office memorandum. I agree with this contention. The memorandum was not an unequivocal order to any bank to pay to anyone any sum of money. The memorandum stated it was payable through the First National Bank in Dallas, but not by such Bank. The reading of the memorandum will bear out the fact that it really is meaningless, and would probably be understood only by the officers of appellee.

Appellee undertook to show that there exists a general custom among insurance companies to settle suits and pay off judgments by memorandums of this nature. Ordinarily, the burden of proof would be upon the party relying upon such a custom to establish it by a preponderance of the evidence, or, in other words, a question of fact not to be decided in a summary judgment proceeding. However, if this general custom was properly established by affidavit it could not control on the question of tender, in the light of all the peculiar facts in this case. Appellee, Great American Insurance Co. was not a party to the $81,636.00 judgment. It was unknown and unheard of in the case by appellant and his attorneys. They were not even shown a copy of the liability insurance policy involved. They were not shown a copy of the memorandum sent to Mrs. George. Apparently, the only way appellant could see it, was to travel 56 miles to Brownsville. Even if he made this trip, Mrs. George, as

the agent of appellee, had no instructions to show it to him. Her only instruction was to deliver it to him after he had executed and delivered to her the receipt which appellee was demanding. Furthermore, appellee was demanding a release it was not entitled to as a prerequisite to the delivery of the memorandum.

I agree with the statement contained in appellant's brief, reading as follows:

"The release which was demanded by the insurance company as a condition precedent to receiving the instrument which appellee calls a draft, contained various recitations which were either entirely outside the knowledge of appellant, or were untrue. Among these recitations are the following:

"(1) That the Great American Insurance Company was obligated to pay $25,000 under its policy of insurance, (neither the appellant nor his counsel had any knowledge relating to such policy and had never seen the same);

"(2) That the Great American Insurance Company had deposited $26,-088.17 with the Clerk of the Court 'by draft,' (no sum of money had been deposited with the District Clerk, and the instrument in question, as previously shown, was not a draft);

"(3) Baucum, by signing such release, would adknowledge receipt 'of the sum of $26,008.17 to me cash in hand paid by the Great American Insurance Company of New York, the receipt whereof is hereby acknowledged,' (when in fact the appellant would have had to execute and deliver the release without having received anything in cash, and upon having executed the release, would have received only the instrument which appellee calls a draft)."

It is not shown even by affidavit, that under all the facts in this case there existed a general custom requiring appellant to execute this release before he could receive the memorandum which, in my opinion, was not a check, a draft, or any negotiable instrument known to the law.

I would reverse the judgment and remand the cause.