Sidney J. BROWN, Plaintiff,

v.

UNITED COMMUNITY NATIONAL BANK, Defendant.

Civ. A. No. 2741-64.

United States District Court
District of Columbia.

Feb. 8, 1968.

Harvey Rosenberg, M. E. Preis, Washington, D. C., for plaintiff.

Arthur J. Hilland, Washington, D. C., for defendant.

## MEMORANDUM OPINION

GESELL, District Judge.

This is an action for damages for the wrongful forfeiture of plaintiff's

stock in defendant corporation. Jurisdiction is based on Title 11, Section 521, of the District of Columbia Code (1967 edition).

On November 18, 1963, a group of business and professional men submitted to the Regional Comptroller of the Currency an application to organize a national bank in the northeast section of Washington, D. C. Preliminary approval of this application was granted by the Comptroller in early February, 1964. The bank was formally organized on May 15, 1964, and was granted a charter, authorizing it to commence business, on August 31 of the same year.

On February 5, 1964, plaintiff, who was not an organizer, subscribed to 2500 shares of the stock of the bank to be organized. The price was $10 per share. The subscription form stated that the subscription was contingent upon approval by the Comptroller of the application for permission to organize and was subject thereafter to full or partial acceptance by the Organization Committee of the bank.

The Stock Committee of the United Community National Bank (in organization) wrote plaintiff, dated May 1, stating that the "Board of Directors" had approved an allocation to him of 2500 shares at a total cost of $25,000. The letter stated that it was necessary that the stock be paid for prior to the initial stockholders' meeting in the middle of May.

Plaintiff did not pay and did not attend the stockholders' meeting on May 15. At that meeting a Board of Directors was elected and at the board's organizational meeting, on the same day, the Organization Certificate was executed and the Articles of Association adopted. At neither meeting was the subject of stock subscriptions discussed.

On June 4, defendant, by its stock committee chairman, wrote plaintiff that the $25,000 due on his allocated shares was payable in full on or before June 10. The letter concluded, "Balances unpaid as of the above date will be forfeited and reassigned."

On June 10, plaintiff, by agreeing to pledge the 2500 shares to the Riggs National Bank, secured a loan of $25,000. The loan was handled by William A. Bryarly, Jr., an officer of the Riggs bank who had been assisting defendant's organizers and who was himself a subscriber. Bryarly mailed defendant a cashier's check for $25,000 to purchase the 2500 shares, with a letter signed by plaintiff instructing the defendant to forward the shares to Riggs. The cashier's check was dated June 10, signed by Bryarly for the Riggs National Bank, and was payable to defendant for credit of plaintiff. The check was mailed on June 10; defendant had no actual notice of the loan or the check until the latter was received on the morning of June 11.

In late June or early July a form letter was sent to plaintiff acknowledging receipt of the check "after June 10, 1964, the deadline for payment of subscriptions to bank stock." The defendant advised that:

"Your check is being held until a determination can be made as to the amount of stock available for distribution. This determination will be made shortly after August 1, 1964. You will then be advised as to the amount of stock allocated to you, if any, and the above check will be applied accordingly."

At its September 9 meeting, defendant's Board of Directors authorized an allocation of ten percent of the stock requested by those whose payments had been received after the June 10 deadline. Accordingly, the bank wrote plaintiff on September 10. It returned his check for $25,000 and offered him 500 shares at $10 each, payment to be made by September 24. Plaintiff's attorney resubmitted the check on September 17 and asked that the 2500-share subscription be honored. Defendant replied on September 22 by returning the check and stating:

"In our letter of June 4 Mr. Brown was advised that his payment was due on or before June 10. It was not

received until June 11, therefore, as the letter itself specified, the allocation to him was forfeited."

Plaintiff did not receive the 2500 shares nor did he take up the 500 shares allocated to him on September 10. This action was filed November 4, 1964.

Plaintiff alleges that his subscription was approved in full by the organizers; that the subscription agreement was adopted by the corporation subsequent to its formation on May 15; that forfeiture of the shares was wrongful as a matter of applicable District of Columbia law because there was a timely and proper tender of performance; and that the proper measure of damages for defendant's wrongful forfeiture is the difference between the market value of the stock on the date of forfeiture and the price which was to have been paid defendant.

The defendant asserts that it never had a contract with plaintiff; that it was not a corporation until August 31 and that its letter of September 10 was a refusal to adopt any contract which might have been made with its organizers. In the alternative, defendant argues that the District of Columbia Code is not applicable; that plaintiff breached the contract by failing to make a valid or timely tender of performance; that plaintiff failed to mitigate damages when he had a duty to do so; and that plaintiff offered no evidence of actual market value.

The Court, having heard the evidence without a jury, holds for the defendant for the reasons given below.

■ National banks are instrumentalities of the Federal Government, created for a public purpose and subject to the paramount authority of the United States. State v. Clement National Bank, 84 Vt. 167, 78 A. 944 (1911), affirmed, 231 U.S. 120, 34 S.Ct. 31, 58 L.Ed. 147 (1913). However, these banks are also subject to state laws unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' func-

tions. Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944).

■ The plaintiff in this case was, and is, a resident of the District of Columbia. The defendant, a national bank, was organized and chartered in the District of Columbia under the provisions of the National Bank Act, 12 U.S.C. § 21, et seq. (1964). Plaintiff's case rests squarely on a stock subscription agreement signed in the District and to have been performed here. For these reasons, and because there is no applicable body of federal law, questions as to the formation, validity, nature and construction of the subscription agreement will be governed by the law of the District of Columbia, subject to the rule in *Anderson,* supra.

■ A subscription to stock in a proposed corporation is generally held to constitute a continuing offer to the corporation which cannot become a binding agreement until the corporation comes into existence and adopts, expressly or impliedly, the offer secured by its promoters or organizers. Glenn v. Busey, 5 Mackey 233, 16 D.C. 233 (1886); 18 C.J.S. Corporations § 294(f) (1939).

In this case, the subscription form itself stated that plaintiff's subscription was "subject to acceptance * * * in full or in part by the Organization Committee of the said bank." This language cannot be construed to mean that a binding and enforceable contract on behalf of the defendant bank was created prior to the defendant bank achieving corporate status. The bank in organization might later approve plaintiff's subscription, but an enforceable call for payment could only be issued by the bank as an existing, recognized corporation.

Section 24 of the National Bank Act, 12 U.S.C. § 24 (1964), states that:

"Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organi-

zation certificate, a body corporate * * *."

Defendant's organization certificate was executed May 15, 1964. The articles and certificate being properly filed, defendant became a corporation as of May 15. State by Parsons v. National Newark & Essex Banking Co. of Newark, 31 N.J.Super. 246, 106 A.2d 358 (1954).

■ The May 1 letter from the bank in organization to plaintiff constituted an acceptance of plaintiff's subscription by the organizers. However, a binding and enforceable contract between plaintiff and defendant did not exist until defendant corporation accepted plaintiff's offer by its letter of June 4. Beginning on June 4, defendant could issue an enforceable call for payment by the plaintiff. Whether the subsequent forfeiture of plaintiff's stock was wrongful is a question arising out of the contract made on that date.

Defendant's letter stated that plaintiff's subscription was "payable in full on or before June 10." It also gave notice that stock not paid for by June 10 would be forfeited and reassigned. Plaintiff urges the application of Title 29, Section 908b, of the District of Columbia Code (June 8, 1954, 68 Stat. 186, ch. 269, § 15). This section provides that:

> "no penalty working a forfeiture of the shares * * * shall be declared against any subscriber unless the amount due thereon shall remain unpaid for a period of twenty days after written demand has been made therefor."

However, Section 903 of the same Title states that chapter 9 does not apply to the organization of banking or trust corporations. Such institutions are governed generally by Title 26 of the Code.

Section 317 of Title 26 states that:

> "if any stockholder shall refuse or neglect to pay any instalment, as required by a resolution of the board of directors, after thirty days' notice of the same, the said board of directors may sell at a public auction * * *."

This section, however, applies only to trust companies organized under section 301 and the remainder of Title 26 is silent with respect to stock subscriptions and forfeiture in the case of a bank.

The issue then is whether, as a matter of common law, plaintiff's tender of performance was timely and proper.

Plaintiff's offer of February 5 contained an implied promise to pay for the shares within a reasonable length of time after the corporation called for payment. 3A, Corbin, Contracts, § 723 (1960). Defendant's acceptance of the offer was conditional upon payment "in full on or before June 10." 3A, Corbin, supra, § 713 (1960). There is no evidence that plaintiff was not given a reasonable length of time in which to pay. Therefore, if plaintiff did not perform in accordance with the terms of the contract, defendant was not bound to perform and the subsequent forfeiture of the shares was proper.

■ In Kerr v. United States, 71 App. D.C. 222, 223, 108 F.2d 585, 587 (1939), the United States Court of Appeals for the District of Columbia said:

> "The word 'tender' is usually held to mean that the thing offered must be actually produced and placed in such a position that control over it is relinquished by the tenderer so that the tenderee may reach out and lay hold on it. (Citations omitted). It also must be made at the place agreed upon. (Citations omitted). Neither of these conditions, in our opinion, is satisfied by the mailing of a money order, unless the payee has consented to make the post office his agent to receive payment. The act of mailing does not amount either to a tender or to a payment until the actual receipt of the letter by the addressee. The rule in such cases is that the postal authorities are the agents of the sender."

Such a holding seems clearly applicable to this case.

■ Finally, plaintiff alleges that Bryarly, who approved the loan of $25,-000, was an agent of defendant and was authorized to receive payment for the shares. On this theory, payment was received by defendant when, on June 10, Bryarly signed the check in his capacity as agent for both the Riggs National Bank and defendant. However, plaintiff has failed to carry the burden of proof with respect to the existence or scope of the asserted agency. Plaintiff had Bryarly under subpoena. When Bryarly refused to appear, the Court advised counsel that a marshal would be sent to bring him in. Counsel then stated that he did not desire Bryarly's testimony.

Judgment shall be entered for defendant with costs. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law.

Counsel to submit an appropriate order within one week from the date hereof.