A. M. Muldrow, Secretary of State et al v.
Texas Frozen Foods, Incorporated

No. A-6029. Decided February 27, 1957.
Rehearing Overruled March 20, 1957.
(299 S.W. 2d Series 275)

*John Ben Shepperd,* Attorney General, *W. V. Geppert, L. P.*

*Lollar,* and *Henry Gates Steen,* Assistants Attorney General, for petitioners.

*Kelley, Looney, McLean & Littleton* and *Willard E. Dallahon,* all of Edinburg, for Respondent.

MR. JUSTICE WALKER delivered the opinion of the Court.

■ On the principal question involved in this case, we hold that a check for taxes delivered to the collecting official on the last day allowed for payment and thereafter returned unpaid by the drawee bank does not constitute a timely payment of such taxes, even though the instrument was dishonored solely because of a mistake on the part of the bank and is paid when presented a second time.

Texas Frozen Foods, Inc., respondent, is a private corporation engaged in the frozen food business. Under the provisions of Art. 7084[1], the company's 1955 franchise tax of $2,508.00 was due on or before May 1st of that year. Respondent's check for that amount dated April 30, 1955, and drawn on The First National Bank of Harlingen, Texas, was received by the Secretary of State before the tax became delinquent. The check was endorsed and transmitted to the State Treasurer, who forwarded the same for collection through banking channels to the drawee bank. Payment was refused and the check was marked "insufficient funds" and returned unpaid by the bank. Demand was then made upon respondent for payment of the tax.

On June 17, 1955, the president of the bank wrote the Secretary of State a letter stating that at about the time the check was issued respondent advised the bank that it would need the unadvanced $5,000.00 of a note previously executed by it to the bank, that through an oversight the advance was not made, and that the returning of the check marked "insufficient funds" was an error on the part of the bank. The check was then redeposited and was paid by the bank on July 18 ,1955.

Demand having been made for the twenty-five per cent penalty provided by Art. 7091[2], respondent paid the same under protest and brought this suit for its recovery. The Court of Civil Appeals has affirmed the judgment in respondent's favor entered by the district court at the conclusion of a non-jury

---

[1]Vernon's Ann. Texas Civ. Stat.
[2]Vernon's Ann. Texas Civ. Stat.

trial. 293 S.W. 2d 221. As indicated above, it is our opinion that the taxes was not paid when due and that respondent is subject to the penalty involved in this suit.

The State's first point of error asserts that Art. 7057b[2] does not authorize a suit for the recovery of a penalty paid under protest. In the course of the oral argument, however, the Attorney General conceded that this point is without merit, and the same will not be considered further.

The real issue in the case is whether the tax was paid when due. Respondent recognizes that if timely payment was not made, the penalty accrued by operation of law and could not be waived by any official of the State. It is apparent that the money did not become available to the State until the check was paid on July 18th, but respondent contends that in legal contemplation payment was made when check was delivered to the Secretary. of State.

■ In dealings between private individuals, it is well settled that the mere delivery to a creditor of the check drawn by his debtor does not in itself discharge the debt in the absence of an agreement to that effect. See Friends in Need Society v. Peterson, Texas Civ. App., 9 S.W. 2d 1110. But when a check is accepted as a conditional payment and is paid in due course, it is generally held that the payment thereupon becomes absolute and relates to the date of delivery of the check. See Texas Mut. Life Ins. Ass'n. v. Tolbert, 134 Texas 419, 136 S.W. 2d 584; 70 C.J.S. Payment, Sec. 24, p. 233, 40 Am. Jur. Payment, Sec. 86, p. 775. The application of this principle to the payment of taxes has been recognized in jurisdictions which have statutes authorizing the payment of such obligations by check. State ex rel Dept. of Unemployment Comp. v. Continental Casualty Co., 130 W. Va. 147, 42 S.E. 2d 820; Cantlay & Tanzola v. Ingels, 31 Cal. App. 2d 553, 88 Pac. 2d 141. And in the case last cited, the doctrine of relation was employed even though the check was dishonored as the result of a mistake on the part of the bank.

Since an individual is free to accept a check as conditional payment and the condition is satisfied when the instrument is paid, it is proper to treat the payment as having been made at the time the paper was received. We have concluded, however, that this rule cannot be applied to the payment of taxes by check. In the absence of a constitutional or statutory provision authorizing payment in some other medium, taxes must always be paid in money. See 84 C.J.S. Taxation, Sec. 623, p. 1241; 51 Am. Jur.

Taxation, Sec. 949, p. 834; Cooley, The Law of Taxation, 4th ed. 1924, Vol. 3, p. 2483, Sec. 1252. Our Constitution and statutes do not provide for the payment of taxes by check, and no official can obligate the State to accept such an instrument as either absolute or conditional payment. There is no basis then for the application of the doctrine of relation in this case.

■ We know that collecting officials customarily accept personal checks for taxes. If a check given for this purpose is promptly paid when first presented in due course to the drawee bank, then for all practical purposes the funds are as readily available to the taxing authority as if payment had been made in money. Under these circumstances we would have no difficulty in holding that the check was the legal equivalent of money and that the taxes were discharged when the paper was received by the collecting official. But if the instrument is dishonored when presented to the bank, it cannot be said that the taxes were paid at the time the check was received.

The use of a check to pay taxes is always at the risk of the taxpayer, for whose accommodation the receiving official acts in attempting to collect the same. The printed form furnished by the Secretary of State and used by respondent in the preparation of its franchise tax return cautions the taxpayer to make payment by certified check, cashier's check or bank draft. If these instructions had been followed, the present controversy probably would never have arisen. Instead respondent chose to remit by personal check, and thereby took its chances that the check might be dishonored by the bank. When the check was returned unpaid, it became necessary for the Secretary of State to cancel the record of payment theretofore entered and take further steps to collect the tax. Although the State finally received credit for the amount of the tax, this would have occurred some six weeks earlier if the check had been paid when first presented. We hold that when a check given for taxes is properly presented and is dishonored for any reason, its subsequent payment operates to discharge the taxes as of the time of such payment and not before.

In Hamilton v. Baker, 147 Texas 240, 214 S.W. 2d 460, it was held that a typical "unless" oil and gas lease was kept in force by the timely delivery to the lessor of a good check for the amount of the delay rental, even though the check was dishonored by mistake and was never cashed. Respondent argues that since arrangements had been made for the deposit to cover its check and the same was returned unpaid solely because of

a mistake on the part of the bank, there was no failure to pay the tax when due because the instrument was good at all times.

The above mentioned letter written by the president of the bank to the Secretary of State is the only evidence of the arrangements made with the bank. Since the letter is hearsay and has no probative force whether admitted over or without objection, there is no evidence in the record to support the conclusion that the check was good when issued. See Texas Co. v. Lee, 138 Texas 167, 157 S.W. 2d 628. We also agree with the Attorney General that the letter, which is set out in full in the opinion of the Court of Civil Appeals, is not entirely clear as to when the additional $5,000.00 was to be advanced and credited to respondent. If we should rest our decision upon either of these grounds, however, it would be necessary to determine whether the case should be remanded for further developmnt. We shall assume, therefore, that before the check was issued respondent requested and the bank agreed that the remaining $5,000.00 of the loan would be deposited to respondent's credit immediately.

It has been suggested that despite the language in the opinion to the contrary, equitable considerations had some influence upon our decision in the Hamilton case. See 27 Texas Law Rev. 561. However that may be, the case stands only for the proposition that the delivery and acceptance of a good check constitutes such payment as will prevent the termination of an estate in land by operation of a special limitation. This must be regarded as an exception to general rules governing the efficacy of checks as payment, and it is our opinion that the exception should not be extended to include payment of taxes by check.

Respondent also argues that by endorsing the check to the order of the State Treasurer, the Secretary of State negotiated the instrument and thereby accepted the same as absolute payment of the tax. As pointed out above, no official can obligate the State to accept such an instrument as absolute payment of taxes. It is also our opinion that the endorsement of a check for taxes by the collecting official to the State Treasurer is not a negotiation of the instrument within the rule upon which respondent relies.

The judgments of the courts below are reversed, and judgment is here rendered that respondent take nothing.

Opinion delivered February 27, 1957.

Rehearing overruled March 20, 1957.