LISTEMAN, BANDY & HAMILTON ASSOCIATION, Plaintiff, *v.* ELIZABETH SUE SWAN WILSON, Defendant-Appellee.—(LINDA BARRIGER, Ex'r of the Estate of Charles J. Swan, Deceased, Defendant-Appellant.)

Fifth District    No. 81-37

Opinion filed January 19, 1982.—Rehearing denied January 29, 1982.

Churchill, Nester and McDonnell, of Belleville (Joseph B. McDonnell, of counsel), for appellant.

Walker and Williams, P. C., of Belleville (John B. Gunn and James C. Cook, of counsel), for appellee.

JUSTICE WELCH delivered the opinion of the court:

This suit in interpleader was brought by the law firm of Listeman, Bandy and Hamilton as plaintiff against defendant-claimant Linda Barriger, executrix of the estate of Charles J. Swan, and defendant-claimant Elizabeth Sue Swan Wilson, whose marriage to Charles J. Swan had been dissolved. Charles Hamilton of the plaintiff law firm had represented Elizabeth Sue Swan Wilson as plaintiff in a personal injury suit against Venture Stores. In dispute here is a portion of the amount for which that suit was settled.

The lawsuit against Venture Stores was filed on August 18, 1978, prior to dissolution of the marriage on September 20, 1978. During the dissolution proceedings Charles Swan was not represented by counsel though his wife was. The judgment for dissolution provided in part:

"IT IS FURTHER ORDERED that with reference to the matter of Elizabeth Swan vs. Venture (No. 78-L-645), upon a verdict, settlement and recovery, the proceeds will be divided equally between the petitioner [Elizabeth Sue Swan] and respondent [Charles Swan], if the respondent is living."

On April 22, 1980, claimant Wilson agreed to accept Venture's offer of settlement in the amount of $30,000. On Friday, May 2, 1980, her

attorney received at his office a draft from Venture's insurer in the amount of $30,000 together with a release and settlement agreement and a stipulation to dismiss the lawsuit. At approximately 10:30 a.m. on Saturday, May 3, 1980, claimant Wilson endorsed the draft for $30,000, signed the release and settlement agreement and authorized her attorney to execute the stipulation to dismiss the lawsuit. About two hours later claimant Wilson learned that at approximately 9:15 that same morning Charles Swan had suffered a gunshot wound accidentally inflicted by another person. At 1:15 p.m. on May 3, 1980, Charles Swan was pronounced dead. On Monday, May 5, 1980, claimant Wilson's attorney presented the endorsed draft for payment, and it was duly paid. Plaintiff law firm subsequently made distribution to Elizabeth Sue Swan Wilson of half of the amount of the settlement that remained after payment of expenses and deposited with the trial court the amount of the other half, that is, $10,940.48, which represented the portion of the settlement claimed by both Elizabeth Sue Swan Wilson and the executrix of Charles Swan's estate.

After a hearing the trial court concluded that although a "settlement" had been reached, there had been no "recovery" during the lifetime of Charles Swan. The court reasoned that the money which the draft represented, and not the draft itself, was the object of the settlement and that since claimant Wilson had not actually received prior to Charles Swan's death the "funds or monies" she sought from the settlement, no "recovery" had been had pursuant to the terms of the judgment for dissolution. Finding that the disputed portion of the settlement belonged to claimant Wilson, he entered judgment in her favor and subsequently denied claimant Barriger's motion for rehearing to vacate judgment and to enter judgment in her favor. From the order denying that motion claimant Barriger appeals.

Initially, we note that this case does not involve the effect of the acceptance of the draft on the underlying obligation of Venture to claimant Wilson. (Compare Ill. Rev. Stat. 1979, ch. 26, par. 3—802(1); *Consolidated Freightways v. Industrial Com.* (1971), 48 Ill. 2d 221, 269 N.E.2d 291). It involves an ancillary obligation, one which arose from the 1978 judgment for dissolution. The question is whether "a verdict, settlement and recovery" was obtained by claimant Wilson when Charles Swan was alive.

The phrase which must be interpreted does not provide an obvious answer. It refers to verdict settlement and recovery in a conjunctive sense. But, as noted by claimant Barriger, a verdict is reached after undergoing a jury trial (Ill. Rev. Stat. 1979, ch. 110, par. 65), while a settlement traditionally refers to an out of court agreement to conclude litigation. (Webster's Third New International Dictionary 2079 (1961) ("settle," def-

inition 7b).) Certainly it could not have been intended that the Venture litigation must result in a verdict and settlement before Charles Swan became entitled to half of the "proceeds."

Nor does the use of the word "recovery" hint at a solution of the problem. It is not clear whether the recovery must accompany the "verdict," the "settlement," or either procedure. The courts of this State have construed "recovery" to apply only to judicial proceedings (*Peavler v. City of Mt. Vernon* (1910), 158 Ill. App. 610), but they have also read the term to refer to settlements. (*Standidge v. Chicago Rys. Co.* (1912), 254 Ill. 524, 93 N.E. 963.) "Recovery" could refer to claimant Wilson's receipt of proceeds, as opposed to her merely obtaining a judgment (*Donoho v. O'Connell's Inc.* (1960), 18 Ill. 2d 432, 164 N.E.2d 52), or, the term may simply be another way to describe a judgment. *Peavler.*

■■■ In the interests of brevity, we will not belabor the point, but it is obvious that the phrase "verdict, settlement and recovery" is too ambiguous to state definitively when Charles Swan would become the owner of half of the proceeds from the Venture litigation. Since the language of the judgment of dissolution contains this significant ambiguity, we may consider extrinsic evidence to determine what was intended by the language in question. *La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370 N.E.2d 188, *cert. denied* (1978), 436 U.S. 925, 56 L. Ed. 2d 768, 98 S. C. 2818; *Maloney v. Maloney* (1980), 88 Ill. App. 3d 146, 410 N.E.2d 416.

To us, the most probative extrinsic evidence available was given by claimant Wilson in the 1978 dissolution proceedings. The relevant testimony, which reveals an uncanny prescience, is reproduced below.

Q. "Now, you have agreed with your husband that you will split any verdict, settlement or recovery of that case?

A. [Claimant Wilson]: Right.

Q. And isn't it also a fact that we have talked about this in my office?

A. Right.

Q. And I advised you against doing this?

A. Right.

Q. And you still told me that you want to do it, is that correct?

A. That is right.

Q. And it was on your initiative that you decided that you would split the proceeds of that lawsuit with your husband?

A. Right. That is in the event that he is living at the time.

Q. Do you think there is some chance he might be dead?

A. No, but it is just the bunch that he lives with. He lives a dangerous life. He really does.

Q. Does he? Okay.

A. And I don't want it to go into an estate, his estate or something like that. Do you understand what I am saying?"

This testimony shows that, when she requested the inclusion of the provision in question in the judgment of dissolution, claimant Wilson anticipated the situation which ultimately occurred. Clearly, she intended to divide the proceeds of the Venture litigation with Charles Swan only if she could make that division with Swan himself, and not with an estate. Claimant Wilson wanted Swan, and not his heirs, to enjoy the results of the lawsuit. But that was not possible, for, by the time any division could be made, Charles Swan was dead.

Were we to require distribution of half of the Venture settlement to Swan's estate, we would frustrate the intent of the parties to the order of dissolution, as expressed in open court under oath by one of those parties. It barely needs citation that the guiding principle in the interpretation of contracts is to ascertain the intent of the parties. (*United Farm Bureau Mutual Insurance Co. v. Elder* (1980), 89 Ill. App. 3d 918, 412 N.E.2d 630). Because the decision of the trial court effectuates that obvious intent, we believe that it was correct and should be affirmed.

Affirmed.

HARRISON, J., concurring.

JUSTICE JONES, dissenting:

Without expressly so stating, the majority has held that payment of obligations by check or draft is not made until the cash they represent is in hand. Such holding is contrary to provisions of the Illinois Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 1—101 *et seq.*) and contrary to the supreme court case of *Consolidated Freightways v. Industrial Com.* (1971), 48 Ill. 2d 221, 269 N.E.2d 291. Therefore, I respectfully dissent.

The opinion of the majority merely begs the question presented by this case; it does not answer it. Not only that, it does not even address the issue presented us by the appeal.

The majority does correctly state the issue to be, and I use their language, "[w]hether a 'verdict, settlement and recovery' was obtained by claimant Wilson when Charles Swan was alive." Following recital of the issue, the majority finds ambiguity in the quoted phrase, determines to use extrinsic evidence to resolve the ambiguity, recites testimony given by the former Mrs. Swan at the hearing on the dissolution case and concludes that it was her intention to share the proceeds of her settlement with Mr. Swan only if he was alive when he received such proceeds. No consideration is given to the question of what is to be considered the proceeds of

the settlement and whether Mr. Swan was alive at the time those proceeds were received.

The only testimony of claimant Wilson given during the hearing on the dissolution which bears on the issue of this case, and as quoted by the majority, is:

"Q. And it was on your initiative that you decided that you would split the proceeds of that lawsuit with your husband?

A. Right. That is in the event that he is living at the time."

The essence of this testimony is that claimant Wilson wanted to split the "proceeds" of her lawsuit against Venture if her husband "was living at the time." Thus, the testimony of claimant Wilson is even less clear than the language in the judgment for dissolution. Claimant Wilson's testimony explains nothing; it merely accounts for the presence of the clause in dispute in the judgment for dissolution.

The question unaddressed by the majority, and the only issue in this case, is whether claimant Wilson received the proceeds of her settlement with Venture while Charles Swan was living.

In her brief claimant Wilson cites *Stephens Engineering Co. v. Industrial Com.* (1919), 290 Ill. 88, 93, 124 N.E. 869, 870-71, for the proposition, which we quote from the case itself, that "[t]he receipt of a check is not payment of a debt until such check is honored, unless accepted as such." However, in *Consolidated Freightways v. Industrial Com.* (1971), 48 Ill. 2d 221, 224, 269 N.E.2d 291, 293, relied upon by claimant Barriger in her brief, in its analysis of the question of what constitutes payment when it is made in the form of a check or draft the supreme court quoted that statement from *Stephens* and declared it "not * * * erroneous" but "incomplete." Determining whether the date of payment is the date on which a check is received or the date on which it is cashed, the court continued:

"Although a broader and more complete statement of the principle of law may not have been necessary to the decision in the *Stephens* case, it appears that this pronouncement has misled the claimant in the case now before us.

In the absence of an agreement otherwise providing, or the consent of the creditor to receive some other medium, payment may be made only in money. [Citations.] However, by agreement either expressed or implied, or when the creditor so consents, payment may be made by furnishing, transferring or delivering anything of value. [Citations.]

As stated in *Stephens*, in the absence of such an agreement or consent, the giving of a draft or a check by a debtor to the payee is not a payment or discharge of the debt. However, the same does constitute a conditional payment of the obligation, the condition

being its collectibility from the bank on which it was drawn. [Citations.]

The condition that the check be paid on presentation to the bank on which it is drawn is a condition subsequent. (*Commissioner of Internal Revenue v. Bradley* (6th cir., 1932), 56 F.2d 728; *Paris v. Carolina Builders Corp.*, 244 N.C. 35, 92 S.E.2d 404.) When the check is paid on presentment the condition to which the payment was subject is performed and what had been a conditional payment at the time of the delivery of the check becomes an absolute payment and such payment relates back to the time the check was delivered to the payee. (*Duke v. Sun Oil Co.* (5th cir., 1963), 320 F.2d 853; *Muldrow v. Texas Frozen Foods* (1957), 157 Tex. 39, 299 S.W.2d 275; *Texas Mutual Life Insurance Association v. Tolbert*, 134 Tex. 419, 136 S.W.2d 584; *Hooker v. Burr*, 137 Cal. 663, 70 P. 778, affirmed in 194 U.S. 415, 48 L. Ed. 1046; *Ogier v. Pacific Oil and Gas Development Corp.*, 135 C.A. 2d 776, 288 P.2d 101; 70 C.J.S., Payment, sec. 24; 40 Am. Jur., Payment, sec. 86.) The date of payment then becomes the date the check was delivered to the payee and not the date that the same was cashed or deposited at the bank or the date that the same was paid by the bank on which it was drawn. *Summit Mall, Inc. v. Guran* (1966), 7 Ohio App. 2d 53, 218 N.E.2d 637.

This construction is in accord with the provisions of section 2—511 and section 3—802 of the Uniform Commercial Code as reflected in the comments thereto. S.H.A. ch. 26, §2—511, Illinois Code Comment 3, subsection (3), Uniform Commercial Code Comment 3, and §3—802, Illinois Code Comment, subsection (I)(b), Uniform Commercial Code Comment 3." 48 Ill. 2d 221, 224-25, 269 N.E.2d 291, 293-94.

In the case at bar claimant Wilson's attorney received the draft from Venture's insurer on May 2, 1980, and as payee claimant Wilson endorsed it the following morning. Thus, prior to Charles Swan's death later that day the draft had been delivered to claimant Wilson. Conditional payment was made when the draft was delivered to her. Absolute payment was made when the draft was paid upon presentment. The date of payment related back to the date the check was delivered to her with the result that payment was made and, hence, recovery was had prior to Charles Swan's death. Since Charles Swan was living at the time of recovery, the disputed portion of the settlement belongs to claimant Barriger, and for that reason I would reverse the judgment of the trial court.

As a final ingredient it should be noted that if there was any ambiguity in the language of the judgment of dissolution, it was created by

claimant Wilson. It was she who obtained the dissolution and her attorneys who prepared the judgment and selected the language which was used to bring about the sharing of the Venture settlement proceeds. Although Charles Swan entered his appearance in the dissolution proceeding, he was not represented by counsel and did not appear at the hearing.