(No. 56289—

LISTEMAN, BANDY & HAMILTON ASSOCIATION, Appellee, v. ELIZABETH SUE SWAN WILSON *et al.*—(Linda Barriger, Ex'r, Appellant).

*Opinion filed January 24, 1983.*

Joseph B. McDonnell, of Churchill, Nester & McDonnell, of Belleville, for appellant.

John B. Gunn and James C. Cook, of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Listeman, Bandy & Hamilton, a professional corporation licensed to practice law, instituted this interpleader action in the circuit court of St. Clair County, joining as defendants Elizabeth Sue Swan Wilson and Linda Barriger, executrix of the estate of Charles J. Swan. The complaint sought a determination as to which defendant was entitled to a disputed portion of the proceeds received by plaintiff in settlement of a personal injury suit filed on behalf of defendant Mrs. Wilson. The appellate court affirmed the judgment of the trial court awarding the disputed sum to her (103 Ill. App. 3d 87), and we granted Linda Barriger's petition for leave to appeal.

Mrs. Wilson, who had married Charles J. Swan in

1966, obtained an uncontested judgment dissolving their marriage on September 20, 1978. That judgment provided, concerning the potential proceeds of a personal injury lawsuit instituted by Mrs. Wilson against Venture Stores during her marriage to Charles J. Swan, as follows:

"IT IS FURTHER ORDERED that with reference to the matter of Elizabeth Swan vs. Venture (No. 78-L-645), upon a verdict, settlement and recovery, the proceeds will be divided equally between the petitioner [Mrs. Wilson] and respondent [Charles J. Swan] if the respondent is living."

During the dissolution proceeding, Mrs. Wilson had testified that she wanted to share her recovery with Charles J. Swan, but only if he was living, since she did not wish the money to go into his estate.

Attorney Charles Hamilton, a partner in the plaintiff firm, represented Mrs. Wilson in her personal injury action. On April 22, 1980, she authorized him to accept a settlement offer of $30,000 from Venture Stores, and on May 2, he received a check for that amount drawn by Venture Stores' insurer, Liberty Mutual Insurance Company, naming both the law firm and Mrs. Wilson as joint payees. Plaintiff's secretary notified her that the settlement check and related documents had arrived. Mrs. Wilson went to plaintiff's office, endorsed the check and executed releases in favor of Venture Stores at approximately 10:30 a.m. on May 3. Charles J. Swan was the victim of an accidental shooting on the morning of that same day and he died at 1:15 p.m. Mr. Hamilton was informed of Mr. Swan's death later in the afternoon and, although he had not read the provisions of the dissolution judgment order, he was aware that Mr. Swan was to receive one-half of the recovery if still living when Mrs. Wilson received it. Accordingly, after the settlement check "cleared" banking channels, plaintiff deducted its fees and costs which were due and gave Mrs. Wilson its check for $10,940.48, representing one-half of

the net recovery. Both she and defendant Barriger, executrix of the estate of Charles J. Swan, subsequently claimed the other half of the net proceeds.

The parties agree that the dispositive issue in this cause is whether Mrs. Wilson received a settlement and recovery while Charles J. Swan was still alive. While it is undisputed that she reached a settlement agreement with Venture Stores, that fact alone does not resolve the issue, for the language of the order is that the division is to occur upon "verdict, settlement and recovery *** if the respondent [Charles Swan] is living." We agree with the appellate court that the word "recovery" as used in the order of dissolution was ambiguous. This court has consistently held that "recovery" refers to actual proceeds from a judgment or settlement (see *Donoho v. O'Connell's, Inc.* (1960), 18 Ill. 2d 432, 439, *Standidge v. Chicago Rys. Co.* (1912), 254 Ill. 524, 533-34), although it has recognized that the term may carry a different meaning in some circumstances. (*Donoho v. O'Connell's, Inc.* (1960), 18 Ill. 2d 432, 439.) See also the definition of "recovery" in Ballentine's Law Dictionary 1099 (1948 ed.).

Defendant Barriger, urging this court to consider *Consolidated Freightways v. Industrial Com.* (1971), 48 Ill. 2d 221, as controlling, argues that "recovery" should be construed here to mean "payment." We consider *Consolidated Freightways* readily distinguishable. In that case, this court held that delivery of a check to the sole payee constituted a conditional payment which retroactively became unconditional when the instrument was paid by the drawee upon presentment. (48 Ill. 2d 221.) Unlike the situation in *Consolidated Freightways*, Mrs. Wilson was not the sole payee and could not negotiate the insurance check here without the endorsement of her co-payee, in whose possession the check remained. Ill. Rev. Stat. 1979, ch. 26, par. 3—116.

The conditional-payment rule is inapplicable in these circumstances since the Uniform Commercial Code provisions

which form the basis of that rule govern only the rights and liabilities of the parties to a check. This limitation is expressly noted by the Uniform Commercial Code draftsmen in their official commentary:

> "Subsection (3) is concerned with the rights and obligations as between the parties to a sales transaction when payment is made by check. This Article recognizes that the taking of a seemingly solvent party's check is commercially normal and proper and, if due diligence is exercised in collection, is not to be penalized in any way. The conditional character of the payment under this section refers only to the effect of the transaction 'as between the parties' thereto \*\*\*." Ill. Ann. Stat., ch. 26, par. 2—511, Uniform Commercial Code Comment, at 402 (Smith-Hurd 1963). See also Ill. Ann. Stat., ch. 26, par. 3—802, Uniform Commercial Code Comment (Smith-Hurd 1963).

Defendant Barriger's contention that "recovery," as used in the dissolution order, should be construed simply to mean "payment" is completely lacking in merit. Because the dissolution order was apparently drafted by defendant Wilson's attorney, it is argued that we should strictly construe that document against Mrs. Wilson. While that rule of interpretation is appropriate in cases involving ambiguous contractual terms (see, *e.g., Weiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105), it is inapplicable when we seek the meaning of a judicial decree, which is a pronouncement of the court and not the parties.

In light of the uncontested nature of the dissolution proceeding, it seems apparent that Mrs. Wilson's testimony in that case has significant probative value in determining the trial judge's intent. During the dissolution proceeding, Mrs. Wilson gave the following responses when questioned by her attorney:

> "Q. Now, you have agreed with your husband that you will split any verdict, settlement or recovery of that case?
> A. [claimant Wilson] Right.

Q. And isn't it also a fact that we have talked about this in my office?

A. Right.

Q. And I advised you against doing this?

A. Right.

Q. And you still told me that you want to do it, is that correct?

A. That is right.

Q. And it was on your initiative that you decided that you would split the proceeds of that lawsuit with your husband?

A. Right. That is in the event that he is living at the time.

Q. Do you think there is some chance he might be dead?

A. No, but it is just the bunch that he lives with. He lives a dangerous life. He really does.

Q. Does he? Okay.

A. And I don't want it to go into an estate, his estate or something like that. Do you understand what I am saying?''

That testimony indicates a desire on defendant Wilson's part to share the potential proceeds of her lawsuit, but only on the condition that the money would go directly to her former husband and not to his estate. Nothing in the dissolution judgment indicates the trial judge intended otherwise. Under these circumstances, we are convinced that the use in the judgment order of the phrase "settlement and recovery" was intended to condition Charles Swan's right to share the proceeds upon his living until those proceeds had actually come into Mrs. Wilson's exclusive possession. Possession by her attorneys of a check payable to them and to her which they intended to deposit, await its payment and then deduct therefrom their fees and expenses before making any disbursement to her simply does not meet this requirement.

The appellate court's judgment is accordingly affirmed.

*Judgment affirmed.*