# NO. 12-23-00116-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL A. BENTLEY,* *APPELLANT* | § | *APPEAL FROM THE 145TH* |
| | § | *DISTRICT COURT* |
| *V.* | § | *NACOGDOCHES COUNTY, TEXAS* |
| *CHANDRA L. BENTLEY,* *APPELLEE* | | |

### *MEMORANDUM OPINION*

Appellant, Michael A. Bentley,[1] appeals from a final judgment awarding money damages to Appellee, Chandra L. Bentley.  We reverse and render in part and affirm in part.

#### BACKGROUND

Michael and Chandra are siblings, both children of Linda (sometimes spelled "Lynda" in the record) Lou Bentley, who died in 2013.[2]  Linda owned a log cabin in Nacogdoches County, as well as the sixteen acres of land on which the cabin was located.  Linda's will specified that Chandra was to inherit the cabin and five surrounding acres, while Michael would inherit the remainder of the land.  However, at the time of her death, Linda owed significant debts,

---

[1] Although Lisa M. Bentley was a plaintiff in the underlying action, she is not a party to the judgment at issue and therefore not a party to this appeal.

[2] Because multiple parties and individuals relevant to this matter share a surname, we will refer to them hereafter by their first names for the sake of clarity.

including approximately $13,600.00 in back taxes and a home equity loan with a balance of approximately $3,800.00. To avoid the sale or foreclosure of the real property, Michael, Chandra, and their two other siblings executed a Family Settlement Agreement (FSA) under which they agreed that Michael and his wife Lisa would assume the debts of Linda's estate, and Michael would receive a conveyance of the estate's real property. At the same time, Chandra executed a promissory note in favor of Michael and Lisa in the amount of $27,000.00, to be paid in sixty monthly installments of $560.48. The FSA states, in relevant part:

> …**MICHAEL A. BENTLEY** will transfer by deed to **CHANDRA L BENTLEY** the log home and two (2) acres surrounding the log home upon the payment in full of the $27,000.00 promissory note and all property taxes—but if the promissory note and property taxes are not paid in full, **MICHAEL A. BENTLEY** will retain full, unrestricted ownership and title to the Property[.]
>
> ***
>
> In the event **CHANDRA L BENTLEY** satisfies the requirements upon which any transfer is contingent and which are listed on the previous page of this Agreement, **MICHAEL A. BENTLEY** will execute the deeds or other appropriate transfer documents to effect the applicable transfer, if any.

Chandra's promissory note specifies the "Place for Payment" as "First Bank and Trust East Texas," located in Nacogdoches (although the space for an account number is blank) or "another place that [Michael and Lisa] may designate in writing." The section entitled "Terms of Payment" does not specify any particular form or method for payment.

At issue in this appeal are Chandra's payments for July, August, and October 2018. Chandra testified that on or about July 3, 2018, she either mailed a personal check for that month's payment or placed the check directly in Michael's mailbox. In August, Chandra was visiting an aunt in Florida, so she gave a stamped envelope containing a personal check for that month's payment to her aunt for mailing. At trial, the aunt testified to her memory of mailing that envelope for Chandra. Finally, in October, Chandra mailed a personal check for that month's payment to Michael via certified mail. However, neither Michael nor Lisa ever visited the post office to pick up the envelope, so the post office returned the envelope to Chandra.

In May 2019, Chandra informed Appellants by letter that she completed her payments under the promissory note and requested that they complete the paperwork to transfer the title of the log cabin and two surrounding acres to her. In September 2019, after receiving no response to this or a subsequent letter, Chandra filed suit against Michael and Lisa for breach of contract,

2

in which she alleged she "completely and fully performed all actions required of her under the Promissory Note and Family Settlement Agreement." Michael and Lisa answered and countersued Chandra for breach of contract the following month. They denied that all conditions precedent had been fulfilled, specifying in part that Chandra "fail[ed] to make one or more payments under the terms of the promissory note." Subsequently, on or about October 28, 2019, Michael and Lisa sent Chandra a letter notice of default. This notice stated that Chandra failed to make payments pursuant to the promissory note but did not specify how many payments or which month's payments she failed to make, and did not state the amount Chandra would have to pay to cure the default.

At trial, Michael testified that he never received the missing checks, and to date, he never received payment from Chandra for July, August, and October 2018. Lisa testified that she usually handled depositing the checks from Chandra but could not specify why she never deposited the July and August checks. She stated that it was possible neither she nor Michael ever saw the certified mail notices from the post office for the October check, and that they did not purposely nor maliciously fail to retrieve the certified mail. Chandra acknowledged that, based upon her bank statements in evidence, the checks for those three months never cleared her bank. Additionally, during her testimony, she identified and opened the sealed certified mail envelope containing the check she sent for the October 2018 payment, which she stated was returned to her no later than November 2018. Chandra stated that she never sent replacement checks for any of the three disputed payments.

Question 1 of the jury charge asked whether "Michael Bentley's failure to transfer title to the log home and 2 acres to Chandra Bentley [was] a material breach of the Family Settlement Agreement?" The jury answered "yes." Question 2 asked whether "Chandra Bentley materially breach[ed] the terms of the Promissory Note and/or Family Settlement Agreement by failing to tender all required payments?" The jury answered "no." The jury also found that Chandra did not materially breach the FSA in other ways not at issue in this appeal. The jury awarded Chandra $6,500 in damages, found that Chandra was "ready, willing, and able" to perform her obligations under the FSA, and awarded Chandra $50,000.00 in attorney's fees. The trial court entered a judgment memorializing the jury's findings and ordering Michael to render specific performance to Chandra. This appeal followed.

3

## LEGAL SUFFICIENCY

In his first issue, Michael challenges the legal sufficiency of the evidence to support the jury's finding that he breached the FSA by failing to transfer title. Specifically, Michael asserts that "payment in full" of the promissory note was a condition precedent under the FSA. Without fulfillment of this condition, he argues that he had no obligation to transfer the log home and surrounding two acres to Chandra and could not have breached by failing to do so. He further challenges the legal sufficiency of the evidence to support the jury's finding that Chandra did not breach the FSA by failing to tender all payments.

### Standard of Review

Legal sufficiency questions the existence of any evidence to support a particular finding, and essentially claims the evidence at trial can point to only one legal outcome—that is, the opposite of the outcome made by the fact finder. *See, e.g.*, *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In determining whether the evidence is legally sufficient to support the challenged finding, we review the evidence in the light most favorable to the finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 821-22, 827. If the evidence presented at trial would enable reasonable and fair-minded people to make the finding under review, we may not substitute our judgment for that of the factfinder. *Id.* at 827. We will sustain a legal insufficiency, or "no evidence," point when the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 203 (Tex. App.—Texarkana 2008, no pet.) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

The jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony; the jurors are entitled to believe one witness and disbelieve another. *City of Keller*, 168 S.W.3d at 819. When there is conflicting evidence, it is the province of the trier of fact to resolve such conflicts. *Id.* at 820. In every circumstance in which a reasonable trier of fact could resolve conflicting evidence either way, the reviewing court must presume it did so in favor of the prevailing party, and disregard the conflicting evidence in its sufficiency review. *Id.* at 821.

A party challenging the legal sufficiency of the evidence to support an issue upon which it *did not* have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Bright v. Addison*, 171 S.W.3d 588, 595 (Tex. App.—Dallas 2005, pet. denied). A party attacking the legal sufficiency of the evidence in support of a finding upon which it had the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of its proposed disposition. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In reviewing such a matter-of-law challenge, we employ a two-part test. We first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The issue should be sustained only if the contrary proposition is conclusively established. *Id.*

## Applicable Law

In a suit for breach of contract, the plaintiff has the burden to establish the basic elements of the cause of action, including (1) the existence of a valid contract; (2) performance or tendered performance by the claimant; (3) breach of the contract by the defendant; and (4) damages to the claimant resulting from the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019); *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 213 (Tex. App.–El Paso 2010, pet. denied). Additionally, a party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied. *Associated Indem. Corp. v. CAT Contracting*, Inc., 964 S.W.2d 276, 283 (Tex. 1998). "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Engineering, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010). It may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. *Great W. Drilling, Ltd. v. Pathfinder Oil & Gas,*

5

*Inc.*, No. 11-14-00206-CV, 2020 WL 373096, at *8 (Tex. App.—Eastland Jan. 23, 2020, pet. dism'd) (mem. op.) (citing *Dillon v. Lintz*, 582 S.W.2d 394, 395 (Tex. 1979)). In a contract with a condition precedent, performance (or waiver or excusal thereof) of that condition precedent is an essential element of a plaintiff's breach of contract case. *Abrams v. Salinas*, 467 S.W.3d 606, 614 (Tex. App.—San Antonio 2015, no pet.).

## Chandra's Breach of Contract Claim

In this matter, although the jury instructions provided a definition of "condition precedent," none of the questions asked the jury to determine the fulfillment of any such condition. During the jury charge conference at trial, Michael's counsel objected as follows:

> Defendants believe a question should have been in the charge on conditions precedent based on the law of conditions precedent and as discussed with the Court that the Defendants' duty or obligation to perform any action could only come after the condition precedent of the Plaintiff fully paying the promissory note had been done. And we think in addition to the instruction, there should have been a question along those lines because then it would be much more clear and less confusing or misleading to the jury in answering the rest of the questions but based on the way the law is at this time.

Chandra objected generally to the inclusion of this proposed submission in the jury charge. The trial court sustained Chandra's objection and denied submission of the question requested by Michael.

"If a cause of action consists of more than one element, and an element is omitted from the charge *without* request or objection, the missing element can be found by the trial court or deemed found if certain requirements are met." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 44 (Tex. 2007) (emphasis added). When, as here, a proper objection is made about the omission of an element from the jury charge, and the trial court is neither requested to nor makes written findings on said element, we may not deem that element found in such a manner as would support the judgment based upon the existence of only *some* record evidence. *See id.*; TEX. R. CIV. P. 278 (objection to failure to submit a question is sufficient if the question is one relied upon by the opposing party), 279; *Gordin v. Shuler*, 704 S.W.2d 403, 406–07 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). Therefore, we may not deem a finding that Chandra proved all conditions precedent were satisfied.

Whether the language in an agreement constitutes a condition precedent is a matter of contract construction, which is a question of law. *Walden v. Affiliated Computer Services, Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Here, neither party

disputes that the "payment in full" requirement, reproduced below, constitutes a condition precedent:

> …**MICHAEL A. BENTLEY** will transfer by deed to **CHANDRA L BENTLEY** the log home and two (2) acres surrounding the log home upon the payment in full of the $27,000.00 promissory note and all property taxes—but if the promissory note and property taxes are not paid in full, **MICHAEL A. BENTLEY** will retain full, unrestricted ownership and title to the Property[.]

Although conditions precedent are disfavored such that courts will not construe a contract provision as a condition precedent unless compelled to do so by language that may be construed no other way, we conclude that this language constitutes a condition precedent. *See Criswell v. European Crossroads Shopping Ctr.*, 792 S.W.2d 945, 948 (Tex. 1990) (holding that terms such as "'if,' 'provided that,' 'on condition that,' or some similar phrase of conditional language must normally be included" to create a condition precedent). To construe this clause as anything other than a condition precedent would be to ignore its plain language. *Cf. Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 826 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (although conditions precedent are harsh in operation, court cannot ignore plain language of a contract to avoid such harshness); *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 162 S.W.3d 564, 570 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Therefore, we review the record to determine whether the evidence is legally sufficient to support a finding that "the payment in full of the $27,000.00 promissory note" occurred.

The jury charge does not define "payment" but does define the phrase "tender money" as:

> [T]o give an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less than that due on a specified debt or obligation. The tender must consist of the actual production of the funds and offer to pay the debt involved. The tenderer must relinquish possession of [the funds] for a sufficient time and under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire its possession.

Michael appears to argue that providing an uncertified personal check does not qualify as a tender because it is conditional, rather than an "unconditional offer" of payment. But an uncertified check only constitutes a "payment" once the check has been "honored," that is, until the transfer of funds is made when the recipient cashes or deposits the check.[3] Conversely,

---

[3] "[U]nless otherwise agreed, an uncertified check is merely a conditional payment for an obligation and payment is made absolute when the check is presented and honored. If the check is dishonored, the original obligation remains. The check suspends the obligation "until dishonor of the check or until it is paid or certified."

Chandra does not address Michael's condition precedent argument at all in her briefing, nor does she argue that any conditions precedent were waived. She complains that Michael "elides the distinction between tender and completed payment" but does not herself argue that the July, August, and October 2018 payments were ever completed. Chandra focuses solely on her assertion that she *tendered* the disputed checks to Michael and appears to argue that this fact is sufficient to support the jury's finding that Michael breached the contract.

Our review of relevant authorities lends itself to the conclusion that "tender" and "payment" are not legally interchangeable terms. *Hoxie Implement Co. v. Baker*, 65 S.W.3d 140, 150 n.6 (Tex. App.—Amarillo 2001, pet. denied) ("mere tender" of an instrument (a cashier's check) does not constitute payment of the underlying debt); *In re Jones*, 978 S.W.2d 648, 654 (Tex. App.—Amarillo 1998, no pet.) ("[G]enerally the tender of a check or other draft is not "payment" in the legal sense until paid by the drawee bank[.]"); *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246-47 (Tex. App.—Houston [14th Dist.]1986, writ ref'd n.r.e.) ("In the absence of an agreement, a check, bill of exchange, or draft does not of itself discharge or constitute payment of a debt nor does the preparation of such an instrument constitute legal tender."). At least one of our sister courts has expressly rejected the concept:

> We likewise reject USAA's assertion that the legal meaning of the term "pay" means "tender" and, that as a consequence, its tender of an uncertified check to Letot constituted payment of a claim. A tender is an offer of funds. It is not a payment of funds. Moreover, tender of an uncertified check is a conditional offer. For an uncertified check to constitute a "payment," the check must be both accepted and then honored. We conclude that "pay" does not have the same meaning as "tender of payment."

*Letot v. United Servs. Auto. Ass'n*, No. 05-14-01394-CV, 2017 WL 1536501, at *4 (Tex. App.—Dallas Apr. 27, 2017, pet. denied) (mem. op.). Accordingly, Chandra's provision of the disputed checks to Michael would have *suspended* her payment obligation for those months, but the payments in question would not be *completed* solely based upon transmission of a personal check. *See Probus Properties v. Kirby*, 200 S.W.3d 258, 262 (Tex. App.—Dallas 2006, pet. denied); *Pearson Grain Co. v. Plains Trucking Co.*, 494 S.W.2d 639, 641 (Tex. Civ. App.—

---

*Probus Properties v. Kirby*, 200 S.W.3d 258, 262 (Tex. App.—Dallas 2006, pet. denied); *see also Pearson Grain Co. v. Plains Trucking Co.*, 494 S.W.2d 639, 641 (Tex. Civ. App.—Amarillo 1973, writ ref'd n.r.e.) ("It is settled law in Texas that while mere delivery of a check does not operate to discharge a debt in the absence of an agreement to that effect, payment by the check becomes absolute when the check is paid in due course and relates to the delivery date of the check.") (citing *Muldrow v. Texas Frozen Foods*, 157 Tex. 39, 299 S.W.2d 275 (1957)).

Amarillo 1973, writ ref'd n.r.e.) (citing **Muldrow v. Texas Frozen Foods**; 157 Tex. 39, 299 S.W.2d 275 (1957)).

Our review of the record reveals no evidence supporting a finding that the promissory note was paid in full. Rather, it is apparent that at least three of the payments required thereunder were never completed. We conclude that the evidence is legally insufficient to support a finding that all conditions precedent to Michael's performance obligation under the FSA occurred or were performed. Consequently, the evidence is legally insufficient to support a finding that Michael breached the FSA by failing to transfer the log home and surrounding two acres to Chandra. *See **Chambers Cnty. v. Pelco Constr. Co.***, No. 01-18-00832-CV, 2020 WL 7776078, at *14 (Tex. App.—Houston [1st Dist. Dec. 31, 2020, pet. denied) (mem. op.) ("In the absence of a finding or conclusive evidence of Pelco's performance of the [ ] condition precedent, there can be no recovery on Pelco's breach of contract claim."). Accordingly, we sustain Michael's first issue as to Chandra's breach of contract claim.

## Michael's Breach of Contract Claim

Michael additionally challenges the legal sufficiency of the evidence to support the jury's finding that Chandra did not "materially breach the terms of the Promissory Note and/or Family Settlement Agreement by failing to tender all required payments[.]" Because Michael bore the burden of proof on his own breach of contract claim, he must establish all vital facts in support of his proposed disposition as a matter of law. **Dow Chem. Co.**, 46 S.W.3d at 241. We begin our review by examining the record for evidence that supports the jury's finding, while ignoring all evidence to the contrary. **Id.** Only if we find no evidence to support the finding do we examine the entire record to determine if the contrary proposition is established as a matter of law. **Id.** As aforementioned, the terms "tender" and "payment" are not synonymous under Texas law. *See, e.g.*, **Letot**, 2017 WL 1536501 at *4. Because Question 2 inquires only whether Chandra failed to *tender* the payments required under the promissory note and FSA, in our review of the evidence, we employ the definition of "tender money" given in the jury charge.

Although an uncertified check is a conditional *payment,* until said check is honored, applicable authority suggests that presentment of a check may qualify as a "tender," or unconditional *offer* of payment, under Texas law. For example, in **Republic Underwriters Ins. Co. v. Mex–Tex, Inc.**, the Texas Supreme Court concluded that the mailing of a check constitutes a tender of payment which, if unconditional, prevents the recipient from claiming

penalties for failure to make a prompt payment. ***Republic Underwriters Ins. Co. v. Mex–Tex, Inc.***, 150 S.W.3d 423, 426–27 (2004); ***Letot***, 2017 WL 1536501 at *4 n.5. Similarly, our sister courts have determined that "tender does not necessarily have to consist of a cash payment" if the parties assent to another medium of exchange. *See **Shores Ag-Air, Inc. MPH Prod. Co.***, No. 13-15-00525-CV, 2016 WL 2955066, at *2 (Tex. App.—Corpus Christi May 19, 2016, no pet.) (mem. op.) (mineral interests may serve as tender); ***Jensen v. Covington***, 234 S.W.3d 198, 207 (Tex. App.—Waco 2007, pet. denied), *abrogated on other grounds by **Sorrell v. Est. of Carlton***, 593 S.W.3d 167 (Tex. 2019) (deposit of funds into escrow account sufficient tender in real estate transaction) ("[W]e reject the conclusion and Covington's argument that Jensen's tender was insufficient because it did not offer to pay the redemption price 'in current coin of the realm,' which appears to be a claim that Jensen did not tender payment in cash. But the method of tender of payment is sufficient if it is made in a manner that is 'current in the ordinary course of business.'").

Where courts have found that the provision of a check was *not* an unconditional offer of payment, we note that there were additional communications present which appended a "condition" to the recipient's acquisition of the funds. For example, where a tenant provided rental checks to her landlord, but attached a note requesting that the landlord wait to deposit same until the tenant confirmed the funds were available, the court found that the offer of payment was not unconditional. ***Dupree v. Boniuk Ints., Ltd.***, 472 S.W.3d 355, 365 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Similarly, where a payor provided a check but appended a letter which "requested appellees to hold the check for costs in trust pending "resolution" of the issue" of the appropriate amount of payment, the court found that "appellees were permitted to take [the obligor] at her word and honor her instruction to not deposit the funds, thereby rendering the payment conditional." ***Bluntson v. Wuensche Servs., Inc.***, 374 S.W.3d 503, 508 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In this case, the record does not reveal that Chandra transmitted any such instructions along with the checks. Additionally, the requirement that the recipient of a check retrieve a piece of certified mail has not been found to constitute "special effort" that would render an offer of payment conditional. *See **Leach v. Conner***, No. 13-01-468-CV, 2003 WL 22860911, at *10–11 (Tex. App.—Corpus Christi Dec. 4, 2003, no pet.) (mem. op.) ("The record further reflects that the Leaches could have acquired

10

possession of the tendered funds without special effort by the simple expedient of claiming the Trust's certified letter.").

At trial, Chandra testified that she provided a check for the July 2018 payment either via postal mail or by placing said check into Michael's mailbox directly. She stated that she gave the addressed and stamped envelope containing the August 2018 check to her aunt to be deposited in the mail, and her aunt testified that she did in fact deposit the envelope into the mail. Finally, Chandra testified that she mailed a check for the October 2018 payment via certified mail, which was returned to her after Michael failed to pick it up following notice from the post office. Although Michael testified that he never received any of the disputed checks, Lisa's testimony was markedly less certain on this point. The jury, as factfinder, was permitted to determine which testimony to believe in resolving the conflict in the evidence, and we must presume on appeal that it resolved the conflict in favor of the prevailing party. *City of Keller*, 168 S.W.3d at 819-21. Therefore, we presume that the jury opted to believe Chandra's testimony (as well as her aunt's) to find that Chandra did tender the disputed payments to Michael.

Because we conclude that record evidence exists to support the jury's finding that Chandra did not breach the FSA and/or promissory note by failing to tender all required payments, we need not proceed to determine whether the contrary proposition is established as a matter of law. *See Dow Chem. Co.*, 46 S.W.3d at 241. Accordingly, we overrule Michael's first issue as it pertains to his own breach of contract claim.

## ATTORNEY'S FEES

The jury, and subsequently the trial court's judgment, awarded Chandra $50,000.00 in attorney's fees for her breach of contract claim. Attorney's fees are recoverable on a breach-of-contract claim "in addition to the amount of a valid claim and costs." TEX. CIV. PRAC. & REM. CODE § 38.001(b). To recover fees under this statute, a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009). Because we reverse the jury's finding in Chandra's favor on her breach of contract claim, along with the affiliated damages award, she is not entitled to recover attorney's fees for this claim. And because we overrule Michael's issue

11

pertaining to his own breach of contract claim, he is similarly not entitled to recover attorney's fees.

## CONCLUSION

Having concluded that the evidence is insufficient to support the jury's verdict that Michael breached the FSA (and therefore sustained Michael's first issue in part), we ***reverse*** the trial court's judgment in favor of Chandra on her claim for breach of contract and ***render*** judgment that Chandra take nothing for this claim. We similarly ***reverse*** the trial court's judgment awarding Chandra attorney's fees and pre- and post-judgment interest and taxing costs against Michael.[4] The judgment is ***affirmed*** in all other respects.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 3, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[4] We acknowledge that unresolved issues remain between the parties, but those issues are not before us at this time. *See* TEX. R. APP. 33.1(a); ***Garcia v. Kubosh***, 377 S.W.3d 89, 112 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (appellate courts generally may not act as factfinders, especially because the appellate record may not be fully developed on issues never raised in the trial court).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 3, 2024**

**NO. 12-23-00116-CV**

**MICHAEL A. BENTLEY,**
Appellant
V.
**CHANDRA L. BENTLEY,**
Appellee

Appeal from the 145th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C1935093)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED, and DECREED by this Court that the trial court's judgment is reversed and rendered in part and affirmed in part.

It is therefore ORDERED, ADJUDGED, and DECREED by this Court that the judgment of the district court in favor of Appellee, **CHANDRA L. BENTLEY**, be, and the same is, hereby **reversed** and judgment is **rendered** that she take nothing on her breach of contract, attorney's fees and pre- and post-judgment interest claims.

It is further ORDERED, ADJUDGED, and DECREED by this court that the judgment of the district court against Appellant, **MICHAEL A. BENTLEY**, on his breach of contract claim is **affirmed**.

All costs in this cause expended in this Court be, and the same are, hereby adjudged against the party incurring same, for which let execution issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*